Docket No. 101135.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

ANGELA K. FARLOW BEST, Appellee, v. STEVEN R. DEVORE BEST, Appellant.

*Opinion filed September 21, 2006.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke took no part in the decision.

## OPINION

In this case, we are asked to determine the proper standard of review for findings of abuse made under the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2004)). Respondent, Steven R. Devore Best, requests an abuse of discretion standard. Petitioner, Angela K. Farlow Best, argues that a manifest weight standard is warranted. We agree with petitioner.

## BACKGROUND

On February 4, 2004, petitioner filed a verified petition for an emergency order of protection against respondent. In it, petitioner alleged that, on February 3, 2004, she and respondent had argued

about the terms of their divorce. During the argument, respondent grabbed petitioner by the neck and slammed her into a door. Petitioner dialed 911, and a police search of the house revealed several guns. The police also found, under respondent's side of the bed, a loaded gun that had not been present a few days earlier and "a large number of prescription pills, including [O]xycontin and [V]alium, in bottles without labels." The trial court granted the petition and issued an emergency order, which was later extended by agreement of the parties.

At the plenary order hearing, petitioner testified that, after arriving home on the evening of February 3, 2004, respondent came into the master bedroom where petitioner was watching television. After asking petitioner some questions concerning the couple's pending divorce, respondent ordered petitioner to leave the house. The two of them then left the master bedroom and entered the hallway, where respondent grabbed petitioner by the throat and squeezed. Petitioner felt unable to breathe and tried to scream. Respondent then forced petitioner backwards against a door. Petitioner's head hit first and bounced several times, cracking the door. Petitioner then dialed 911. Petitioner recalled feeling as though her trachea "had a dent in it" and as though she could not swallow. Petitioner looked at herself in the mirror and noticed that her throat appeared red and that her head "had a huge lump on it." Petitioner explained that respondent is strong and athletic, despite an above-the-knee amputation of his left leg. Petitioner then described several guns that respondent owns and stores in various places throughout the house.

On cross-examination, respondent's counsel asked petitioner about a 1995 shoplifting conviction that she had disclosed in written discovery. Petitioner responded by denying that the prosecution resulted in an actual conviction. Petitioner then admitted that, on at least one occasion, she had taken drugs from respondent's office without respondent's permission or knowledge. Petitioner also admitted that she had given a false address on her driver's license application, though she insisted that it was respondent's idea and solely so that their daughter could attend a particular school. Finally, petitioner confirmed that, at the time of the February 3, 2004, altercation, she was under the care of both a psychotherapist and a psychiatrist and was taking medication in accordance with that care.

-2-

Rheanna Hall, a Deerfield police officer, testified next. Hall explained that she responded to petitioner's 911 call. At the scene, Hall interviewed petitioner and respondent. Respondent told Hall that he and petitioner had argued over their divorce, that petitioner was mentally unstable and needed psychiatric help, and that petitioner had attacked him with knitting needles. Hall recalled seeing a small red mark on petitioner's neck, though she could not describe the mark in detail or explain its origin. She could not recall whether petitioner had a bump on the back of her head. Hall took photographs of petitioner at the scene, but conceded that the red mark on petitioner's neck was not visible in those photographs. Hall confirmed that she and her colleagues discovered many firearms in the house, including a loaded handgun stored with the safety off under the bed in the master bedroom.

Following closing arguments, the trial court agreed to enter the plenary order of protection. Before doing so, however, the trial court expressed some skepticism concerning petitioner's credibility:

> "I do have some question as to the credibility of the Petitioner. She's been adequately impeached–though not, I don't want to say substantially–by some prior indiscretions on her part.
>
> I think she was a well coached witness. I noticed that before she answered any question, she thought long and hard about the answer. Rather than really telling me what the truth was, I think that she was searching for the right answer.
>
> That's telling from a witness. It just doesn't speak of things that are truthful that are coming out of the mouth of a witness at any time, and it just doesn't bode well."

Ultimately, though, the trial court concluded that petitioner's allegation of abuse was proven true by a preponderance of the evidence:

> "I guess the bottom line that I come down to, though, is I have to make a decision, and the decision is not one that is beyond a reasonable doubt but by a mere preponderance of the evidence in these cases.
>
> I have to take her testimony which she testified to as corroborated by the witnesses, specifically the police officer,

> as by a preponderance of evidence as being true, and I'm going to issue the Order of Protection."

The trial court subsequently denied respondent's motion to vacate the judgment, and a timely appeal followed.

The appellate court affirmed. 358 Ill. App. 3d 1046. In doing so, the appellate court first addressed the proper standard of review. After reviewing both the plain language of the Domestic Violence Act and the relevant case law, the appellate court held that findings of abuse must be reviewed under a manifest weight standard. 358 Ill. App. 3d at 1051. Applying that standard to the facts of this case, the appellate court concluded that the trial court's abuse finding was not against the manifest weight of the evidence. 358 Ill. App. 3d at 1055.

We granted respondent's petition for leave to appeal. 177 Ill. 2d R. 315(a).

### DISCUSSION

Like the appellate court, we first must determine the proper standard of review for findings of abuse made under the Domestic Violence Act.[1] This turns out to be a simple task, as the Domestic Violence Act speaks directly to this issue. In any proceeding to obtain an order of protection, the central inquiry is whether the petitioner has been abused. Indeed, under section 214(a) of the Domestic Violence Act, once the trial court finds that the petitioner has been abused, "an order of protection *** *shall issue*." (Emphasis added.) 750 ILCS 60/214(a) (West 2004). Section 205(a) of the Act, in turn, provides that proceedings to obtain an order of protection are civil in nature and governed by a preponderance of the evidence standard:

---

[1]In this court, respondent again argues in favor of the abuse of discretion standard, insisting that the manifest weight standard "sets the bar too high for a reviewing court." In fact, the manifest weight standard sets the bar *lower than* the abuse of discretion standard, which this court describes as "the most deferential standard of review–next to no review at all." See, *e.g.*, *In re D.T.*, 212 Ill. 2d 347, 356 (2004). Thus, if all respondent is seeking is the less deferential standard, then the appellate court has already obliged him. Nevertheless, we will address the issue.

> "Any proceeding to obtain, modify, reopen or appeal an order of protection, whether commenced alone or in conjunction with a civil or criminal proceeding, shall be governed by the rules of civil procedure of this State. *The standard of proof in such a proceeding is proof by a preponderance of the evidence*, whether the proceeding is heard in criminal or civil court." (Emphasis added.) 750 ILCS 60/205(a) (West 2004).

Together, then, sections 205(a) and 214(a) establish two things: (1) whether the petitioner has been abused is the central issue in order-of-protection proceedings, and (2) whether the petitioner has been abused is an issue of fact that must be proven by a preponderance of the evidence. At this point, the standard of review for findings of abuse is self-evident. When a trial court makes a finding by a preponderance of the evidence, this court will reverse that finding only if it is against the manifest weight of the evidence. See, *e.g.*, *In re Faith B.*, 216 Ill. 2d 1, 13 (2005); *People v. Ballard*, 206 Ill. 2d 151, 177 (2002); *In re A.P.*, 179 Ill. 2d 184, 204 (1997).

The decision in *A.P.* is squarely on point and therefore highly instructive. In *A.P.*, the State filed a petition for adjudication of wardship pursuant to sections 2–3(2)(ii) and 2–3(2)(iii) of the Juvenile Court Act of 1987 (705 ILCS 405/2–3(2)(ii), (2)(iii) (West 1992)). An adjudicatory hearing was held, and the trial court found that A.P. had been abused by the respondent father. On appeal, this court was asked to review the trial court's abuse finding. The court's analysis began with section 2–18(1) of the Juvenile Court Act, which closely mirrors sections 205(a) and 214(a) of the Domestic Violence Act:

> "At the adjudicatory hearing, the court shall first consider only the question whether the minor is abused, neglected or dependent. The standard of proof and the rules of evidence in the nature of civil proceedings in this State are applicable to proceedings under this Article." 705 ILCS 405/2–18(1) (West 1992).

In other words, the court explained, an adjudicatory hearing is "civil in nature such that a finding of abuse need only be supported by a preponderance of the evidence." *A.P.*, 179 Ill. 2d at 204. As a result, "[t]he circuit court's finding on whether abuse or neglect occurred will not be disturbed on appeal unless contrary to the manifest weight

of the evidence." *A.P.*, 179 Ill. 2d at 204; see also *In re Arthur H.*, 212 Ill. 2d 441, 463-64 (2004) (State has burden of proving neglect by a preponderance of the evidence, and a finding of neglect will be reversed only if it is against the manifest weight of the evidence).

We see no meaningful distinction between this case and *A.P.* In both cases, the trial courts were asked to determine whether abuse occurred, and in both cases the controlling statutes imposed a preponderance of the evidence standard. In *A.P.*, we reviewed the abuse finding under the manifest weight standard, as we do all findings made under the preponderance standard. Respondent provides no compelling justification for departing from this practice, and we therefore adhere to it. A finding of abuse made under the Domestic Violence Act of 1986 will be reversed only if it is against the manifest weight of the evidence.

In reaching this result, we acknowledge that the appellate court has typically applied an abuse of discretion standard when reviewing abuse findings made under the Domestic Violence Act of 1986. See, *e.g.*, *In re T.H.*, 354 Ill. App. 3d 301, 310 (2004); *Peck v. Otten*, 329 Ill. App. 3d 266, 268-69 (2002); *Shields v. Fry*, 301 Ill. App. 3d 570, 573 (1998); *In re Marriage of Lichtenstein*, 263 Ill. App. 3d 266, 269 (1994). However, the "[m]ere repetition of a purported rule of law does not establish its validity." *In re D.T.*, 212 Ill. 2d 347, 357 (2004). Uniformly, these cases lack any analytical foundation for use of the abuse of discretion standard in this context. More importantly, and as the appellate court below noted, these cases wholly ignore the statutory language, which expressly mandates the preponderance standard for abuse findings in the trial court. These cases are therefore of little consequence and are hereby overruled.

The only remaining question is whether the trial court's abuse finding in this case was against the manifest weight of the evidence. Clearly, it was not. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented *In re D.F.*, 201 Ill. 2d 476, 498 (2002). Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses. *D.F.*, 201 Ill. 2d at 498-99. A reviewing court will not substitute its judgment for that of the trial

court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn. *D.F.*, 201 Ill. 2d at 499. Here, petitioner testified that respondent grabbed her by the throat and shoved her against a wall, causing her neck to redden. That testimony was at least partially corroborated by Officer Hall, who responded to petitioner's 911 call and recalled seeing a red mark on petitioner's neck. The trial court observed these witnesses and concluded that, taken together, their testimony made petitioner's abuse allegation more likely true than not. To be sure, the trial court admitted that petitioner was obviously a well-coached witness, and that her credibility had been adequately, though not substantially, impeached. But on the central issue–whether petitioner was abused by respondent–the trial court concluded that Officer Hall's testimony was sufficient to tip the balance in petitioner's favor. That conclusion was neither unreasonable nor arbitrary, and we are in no way convinced that the opposite conclusion was clearly evident.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE BURKE took no part in the consideration or decision of this case.