# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Young*, 2013 IL App (2d) 121196

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF CHRISTINE YOUNG, Petitioner-Appellee, and DOUGLAS YOUNG, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1196 |
| Filed | May 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although the trial court's finding that respondent accessed child pornography on his children's iPad was not against the manifest weight of the evidence, the plenary order of protection entered against respondent was reversed, since the conduct he engaged in did not constitute "harassment" of protected persons under the Domestic Violence Act. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 12-DV-520; the Hon. James S. Cowlin, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

Jamie R. Wombacher and Nicholas E. Alexander, both of Gummerson Rausch Wand Lee Wombacher, LLC, of Woodstock, for appellant.

Benedict Schwarz II, of Schwarz & Pucci, LLC, of West Dundee, for appellee.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Jorgensen and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1      The parties are currently engaged in an action for dissolution of marriage. They have one adult daughter and five minor children, four of whom are adopted and have special needs. Respondent, Douglas Young, appeals from a plenary order of protection entered pursuant to the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/214(a) (West 2010)). The order names the following as protected persons: petitioner, Christine Young; the minor children; and Brittany Zell, a household respite worker who helps with the children. The trial court found that Douglas had emotionally abused and harassed Christine by viewing child pornography Internet sites on an iPad inside the family residence. The order enjoins Douglas from committing further abuse and restricts his access to the children to supervised visitation.

¶ 2      On appeal, Douglas argues that the order of protection must be reversed because (1) his alleged viewing of pornography on the iPad is not "harassment" or other abuse under the Act; (2) his parenting rights should not be restricted, because he did not harass or otherwise abuse the children and there is no indication of a risk of future abuse of the children; and (3) there is no evidence that Brittany was abused or is at risk of future abuse. We conclude that the trial court's finding that Douglas was accessing numerous child pornography sites on the iPad was not against the manifest weight of the evidence. However, we reverse the order of protection because Douglas's conduct is not "harassment" under the Act. We emphasize that the trial court's attempt to protect the children was not unreasonable and may be revisited through the pendency of the dissolution action.

¶ 3                       I. FACTS

¶ 4      The parties were married on April 3, 1987. Christine filed a petition for dissolution of marriage on June 14, 2012. Two children were born to the parties: Courtney Shilkus, age 21 at the time of the filing, and Madison, age 16. In addition, the parties adopted four children, Isabella, age 11, Elijah, age 9, Caeden, age 8, and Kyler, age 6. Isabella suffers from fetal

alcohol syndrome, and Elijah, Caeden, and Kyler have Down's syndrome.

¶ 5     In October 2011, before petitioning for marriage dissolution, Christine moved from the marital residence to an apartment. Douglas continued to reside in the marital residence with the five minor children. Christine returned to the residence in July 2012.

¶ 6     On August 9, 2012, Christine petitioned for an order of protection, requesting that (1) Douglas stay at least 50 feet from Christine and the minor children and (2) Douglas be prohibited from entering the marital property, the children's schools, and places where the children receive therapy. Christine alleged that on August 4, 2012, she attempted to access the wireless network at the marital residence with her own iPad, but she could not because she lacked the correct password. Christine activated another iPad in the home, in search of the password. While searching for the password, Christine viewed the iPad's Internet browser history, which contained a long list of sites that appeared to be pornographic. Christine observed that several of the sites in the iPad's history appeared to contain child pornography. The trial court held an *ex parte* hearing, and, based on Christine's allegations, it entered an emergency order of protection.

¶ 7     On August 16, 2012, the trial court conducted a hearing on Christine's petition for a plenary order of protection. Brittany testified that she was employed by the State of Illinois as a respite worker. In that role, Brittany worked about 50 hours per week in the parties' home, providing assistance and support for the family, given the special needs of four of the five minor children. Brittany started working in the home in March 2012. During her time in the residence, Brittany observed three iPads, one that Elijah brings home from school, one that belongs to Christine, and one that is used by Isabella, Madison, and Douglas. Brittany observed that Isabella and Madison used this iPad most frequently, but Douglas used it in the evening to play video games. Brittany never observed Douglas view pornography on the iPad or any other way. Brittany became aware that Christine owned an iPad on August 15, 2012, when she saw Christine's boyfriend using it at the marital residence.

¶ 8     Julie Pirtle, an employee of the law firm that represents Christine in this case, testified that on August 8, 2012, Christine brought an iPad to the law firm's offices. Pirtle, who admitted that she has no training or experience in analyzing Internet data, accessed the device's settings menu, opened the browser settings, and reviewed the Internet browser history. Pirtle spent two hours reviewing the browser settings and taking "snapshots," which depicted the iPad screen as it appeared when the snapshot was taken. Pirtle testified that she took more than 50 snapshots of the browser settings, connected the device to a computer, and printed the images. The iPad and the printed images of the browser history list were admitted into evidence as Exhibits A and B, respectively.

¶ 9     Christine's counsel called Douglas as a witness. Douglas testified that, since the emergency order of protection required him to vacate the marital residence, he was residing by himself in his car. Douglas was employed as the administrator of a facility that provides therapy for special needs children. Christine's counsel asked several questions regarding the purchase, ownership, and use of the iPad at issue, including questions about the browser history cited in the petition. In response to each question, Douglas asserted his fifth amendment right against self-incrimination and declined to answer.

¶ 10    Christine testified that she lived outside the marital home from October 2011 until July 2012. In January 2012, the family purchased an iPad for the children. Christine owned another iPad, which she kept in a case that made it distinguishable from the children's iPad. Christine testified that she never used the iPad at issue and that only Douglas, Madison, and Isabella used it. Christine estimated that Madison and Isabella used the iPad almost every day, primarily to play music and video games. Christine did not know whether Madison or Isabella used it to access the Internet. Christine observed Douglas use the iPad three to four times per week since she moved back into the house.

¶ 11    Christine testified that, on August 4, 2012, she was trying to determine the family's wireless network password so she could access the Internet using her own iPad. After multiple unsuccessful attempts, Christine turned to the children's iPad to find the password. Christine "stumbled across" a number of Internet sites that she did not recognize. When asked how she found the sites, Christine responded, "Not a clue." Two of the sites depicted children engaged in sexual activities. Christine accessed the sites by clicking on them in the list she was viewing.

¶ 12    Christine testified that she knew Douglas viewed pornography during their marriage. Christine never actually observed Douglas viewing pornography, because, she believed, he did so at night while she was sleeping. Christine admitted that she never saw Douglas use the iPad at issue to view any kind of pornography. Christine had no personal knowledge of how the alleged pornographic sites came to be listed on the iPad browser history. Christine did not know who had access to the iPad before August 4, 2012, when she discovered the sites. Christine admitted that she had no computer or iPad training and that she did not give the iPad to a professional to study.

¶ 13    Christine also admitted that she never observed Douglas threaten, abuse, or behave sexually toward their children. Christine was "not sure" if the children were in danger of imminent harm, but she nevertheless was concerned for the children's safety. Christine testified that Douglas never physically abused her but was mentally abusive in that he turned the children against her, told the children things about her that were not true, and acted dishonestly.

¶ 14    Courtney testified on behalf of Douglas. Courtney testified that she had resided with her parents until she was 18 years old. Courtney never observed Douglas viewing pornography on a computer, and he never made any inappropriate or sexual comments or gestures toward her or her siblings. Joe Shilkus, who was 21 years old and married to Courtney, testified that he had known Douglas since he was 11 or 12 years old. Joe testified that he and Courtney started dating when they were 15 years old and that he interacted with the family a great deal over the years. Joe never observed Douglas viewing pornography on an iPad and he never saw Douglas behave sexually inappropriately.

¶ 15    The trial court entered the plenary order of protection based on certain factual findings. The court did not access any of the sites or even activate the iPad, but, based on the names of the sites, found them to be "pornographic in nature and, according to the testimony, include what I would refer to as kiddie porn." The court found Christine to be credible, citing her testimony that she was looking for a password on the iPad when she encountered the list

of sites and viewed at least two that depicted disturbing pornographic acts of men having sex with young children. The court also noted evidence that Douglas had used the iPad and that he was upset when Christine removed it from the home. The court emphasized that Douglas did not challenge this evidence. The court found that "the reasonable inference from the evidence presented is that [Douglas] is the person who created the list known as Exhibit B and accessed those sites on the iPad here as Exhibit A."

¶ 16    The court remarked that "[t]here's no question in this court's mind that [Douglas's] acts have caused emotional abuse to [Christine]. And [Douglas's] acts are the type that in this court's opinion fall under the broad definition of abuse and harassment under the [Act]." Based on the unchallenged evidence that the parties' minor children had access to the iPad, the court found that they would suffer "serious emotional damage" if they stumbled across one of the sites. The court believed "there's also the risk that [Douglas] might act out based on the sites, which of course, would be devastating."

¶ 17    The trial court granted Christine exclusive possession of the home and custody of the children and ordered Douglas to stay at least 200 feet away. The court entered an order of supervised visitation for Douglas and turned over the iPad to the sheriff's office. Douglas's motion to reconsider was denied and this interlocutory appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    Douglas appeals the entry of the plenary order of protection. Douglas argues that (1) his alleged viewing of pornography on the iPad is not "harassment" or other abuse under the Act; (2) his parenting rights should not be restricted, because he did not harass or otherwise abuse the children and there is no indication of a risk of future abuse of the children; and (3) there is no evidence that Brittany was abused or is at risk of future abuse. Although the trial court's findings are not against the manifest weight of the evidence, we reverse the order of protection because the evidence adduced at trial does not support the court's ruling that Douglas's conduct amounts to harassment under the Act.

¶ 20    It is well established that the primary goal of statutory interpretation is to give effect to the intent of the legislature. *Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 229 (2008). The most reliable indicator of the legislature's objectives in enacting a particular law is the language of the statute. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). The Act is to be construed liberally to promote its purposes, which include supporting the victims of domestic violence to avoid further abuse and "reduce the abuser's access to the victim *** so that victims are not trapped in abusive situations" (750 ILCS 60/102(4) (West 2010)) and to expand the victim's civil and criminal remedies to effect physical separation from the abuser (750 ILCS 60/102(6) (West 2010)).

¶ 21    Section 201(a)(i) of the Act provides that "any person abused by a family or household member" is a protected person. 750 ILCS 60/201(a)(i) (West 2010). Section 214(a) of the Act authorizes the issuance of an order of protection "[i]f the court finds that petitioner has been abused by a family or household member or that petitioner is a high-risk adult who has been abused, neglected, or exploited, as defined in this Act." 750 ILCS 60/214(a) (West

2010). Abuse is defined as "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation." 750 ILCS 60/103(1) (West 2010).

¶ 22      The central inquiry in any proceeding to obtain an order of protection is whether the petitioner has been abused. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). Proceedings to obtain an order of protection are civil and governed by a preponderance-of-the-evidence standard. *Best*, 223 Ill. 2d at 348; see 750 ILCS 60/205(a) (West 2010). A reviewing court will reverse a finding of abuse only if it is against the manifest weight of the evidence. *Best*, 223 Ill. 2d at 348-49.

¶ 23      In this case, the trial court found that the reasonable inference from the evidence is that Douglas created a browser history of certain Internet sites on an iPad that was also used by the children. The court found the sites to be "pornographic in nature and, according to the testimony, include what I would refer to as kiddie porn." The court emphasized that Douglas did not challenge this evidence. We conclude that the trial court's factual findings are not against the manifest weight of the evidence.

¶ 24      Based on these findings, the trial court held that Douglas abused Christine in that creating the browser history of pornographic sites on the family iPad amounted to harassment. We disagree.

¶ 25      " 'Harassment' means *knowing* conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." (Emphasis added.) 750 ILCS 60/103(7) (West 2010). "A person knows, or acts knowingly or with knowledge of *** [t]he result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2010).

¶ 26      To support a finding of harassment, Christine was required to prove by a preponderance of the evidence that Douglas acted "knowingly." See 750 ILCS 60/103(7) (West 2010). Meeting that burden required evidence that Douglas was consciously aware that his viewing of pornography on the iPad was practically certain to cause emotional distress. See 720 ILCS 5/4-5(b) (West 2010).

¶ 27      First, the evidence does not support a finding of harassment of Christine. The undisputed evidence shows that Christine never used the iPad at issue before using it to find the network password. Moreover, Christine admitted that she never witnessed Douglas viewing pornography on the iPad. The evidence shows that Douglas's conduct in viewing pornography on the iPad was not directed toward Christine. Perhaps one reasonably could infer harassment if Douglas had reason to believe that Christine would activate the iPad, search the browser history, and click links to pornography in that history. However, those are not the facts. Douglas did not view the pornography in Christine's presence or leave the sites open and visible; the only visible trace of his conduct was the browser history of sites, which required multiple steps to access. For purposes of proving the harassment of Christine, Douglas did not act "knowingly" because there was no evidence that he was consciously aware that his conduct was practically certain to cause Christine emotional distress. See 720 ILCS 5/4-5(b) (West 2010).

¶ 28 Second, the evidence does not support a finding of harassment of the children. The trial court heard no evidence that the children, whom Douglas reasonably could expect to stumble upon the browser history while using the iPad, actually observed any pornography. Thus, there was no evidence that the children suffered any emotional distress as a result of his conduct.

¶ 29 Third, the evidence does not support a finding of harassment of Brittany. There was no testimony that Brittany ever used the iPad or witnessed Douglas viewing pornography.

¶ 30 Christine cites *In re Marriage of Holtorf*, 397 Ill. App. 3d 805 (2010), for the proposition that the risk of one of the children suffering emotional distress from viewing pornography from the iPad's browser history supports affirming the order of protection. We disagree. In *Holtorf*, the trial court entered an order of protection against a mother who took along her minor children on shoplifting expeditions and on at least one occasion left them in a running car. The trial court based the order of protection on a finding of neglect of the minors. We held that the order based on a finding of neglect of the children was improper because the legislature had never included neglect of anyone other than high-risk adults with disabilities as a basis for the issuance of an order of protection. *Holtorf*, 397 Ill. App. 3d at 810-11. Nevertheless, we affirmed the order of protection based on the case's unique procedural history. First, we noted that the respondent provided an incomplete record of the trial proceedings, which created doubts resolved against her as the appellant. *Holtorf*, 397 Ill. App. 3d at 811. Second, the petition contained 13 allegations, including that the respondent was arrested for retail theft three times while one or both of the children were with her, the respondent routinely shoplifted while the children were with her, and she left the children alone in the car while it was running. *Holtorf*, 397 Ill. App. 3d at 811. Third, these allegations supported a finding of physical abuse, defined as "knowing or reckless conduct which creates an immediate risk of physical harm" (750 ILCS 60/103(14)(iii) (West 2008)), which was alleged in the petition. Fourth, the trial court found that these allegations were proved by a preponderance of the evidence when it entered the emergency order of protection, and we assumed from the incomplete record that the court heard the same evidence regarding the same allegations before granting the plenary order of protection. *Holtorf*, 397 Ill. App. 3d at 811-12. We concluded that, because that evidence was sufficient for a finding of abuse at the first hearing, it would also have been sufficient for such a finding at the second hearing. We held that, although the trial court erred in issuing the plenary order of protection based on its finding that the minors were neglected, rather than abused, we presumed that the evidence supporting the allegations was sufficient for a finding of physical abuse pursuant to section 103(14)(iii) of the Act (750 ILCS 60/103(14)(iii) (West 2008)). Therefore, although the basis of the plenary order of protection was not correctly noted on the form, we concluded that the trial court did not commit reversible error in issuing the plenary order of protection. *Holtorf*, 397 Ill. App. 3d at 812.

¶ 31 Unlike the petitioner in *Holtorf*, Christine alleges only one basis for entering an order of protection: emotional abuse through harassment. The trial court did not find, and Christine does not argue, that Douglas's conduct amounted to any of the other types of abuse, *i.e.* physical abuse, intimidation of a dependent, or interference with personal liberty or willful deprivation. 750 ILCS 60/103(1) (West 2010). We further note that section 103(7) of the Act

provides that certain types of conduct create a rebuttable presumption of causing emotional distress for the purpose of proving harassment. 750 ILCS 60/103(7) (West 2010). However, Christine does not argue that Douglas engaged in any of these types of conduct either. *Holtorf* is an unusual case, distinguishable on its unique procedural history.

¶ 32                                    III. CONCLUSION

¶ 33     We conclude that the trial court's finding that Douglas was accessing numerous child pornography sites on the children's iPad was not against the manifest weight of the evidence. However, we reverse the plenary order of protection because under the Act Douglas's conduct as shown at trial was not "harassment" of any of the protected persons. Our holding obviates the need to address Douglas's remaining arguments. We again emphasize that the trial court's attempt to protect the children was not unreasonable and may be revisited through the pendency of the dissolution action.

¶ 34     For the reasons stated, we reverse the plenary order of protection.

¶ 35     Reversed.