**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200536-U

Order filed April 1, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* R.S., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal No. 3-20-0536 |
| Petitioner-Appellee, | ) | Circuit No. 17-JA-139 |
| | ) | |
| v. | ) | |
| | ) | |
| Jenitta J., | ) | Honorable |
| | ) | Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justices Holdridge and O'Brien concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's best interest finding was not against the manifest weight of the evidence.

¶ 2    Respondent mother, Jenitta J., appeals from an order of the trial court terminating her parental rights. On appeal, mother argues the trial court erred by finding it was in the best interest of the minor to terminate her parental rights.

I. BACKGROUND

¶ 4      On May 22, 2017, the State filed a petition for adjudication of wardship (neglect petition) alleging that R.S. (D.O.B. 4/05/2017) was a neglected minor pursuant to section 2-3(b) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-3(b) (West 2016)) in that her environment was injurious to her welfare. The neglect petition alleged that due to her homelessness, mother gave R.S. to R.S.'s father when R.S. was two days old, knowing that father had previously been found unfit and remained unfit in five prior juvenile cases due to the extensive abuse and neglect of R.S.'s siblings, among other things.

¶ 5      On August 11, 2017, the trial court conducted an adjudicatory hearing on the neglect petition pertaining to the infant, R.S. The court adjudicated R.S. neglected and entered a dispositional order finding mother unfit based on the contents of the neglect petition.

¶ 6      On February 12, 2020, the State filed a petition to terminate mother's parental rights (termination petition) alleging mother was an unfit person as defined under section 1(D)(b) of the Adoption Act because she failed to maintain a reasonable degree of interest, concern, or responsibility concerning R.S.'s welfare. 750 ILCS 50/1(D)(b) (West 2018). Following a hearing on October 9, 2020, the trial court found the fitness portion of the State's termination petition proven by clear and convincing evidence. Thereafter, the proceedings shifted to determine the best interest of R.S.[1]

¶ 7      The best interest hearing report (the report), submitted to the court by a FamilyCore caseworker, revealed that R.S. began her foster placement in May 2017 when R.S. was approximately one month old. The caseworker indicated that she had at least monthly contact

---

[1]The record reveals that the trial court began the hearing on the State's termination petition on July 31, 2020. The record further indicates that following the evidence that was heard on July 31, 2020, the court asked the parties to submit written closing arguments concerning mother's fitness as it pertained to the State's termination petition.

with R.S. and her foster parents in their home. The home was in good repair and fulfilled all Department of Children and Family Services (DCFS) standards. At the time of the report, R.S.'s foster parents were providing for R.S.'s basic needs of food, shelter, health, and clothing.

¶ 8 The report also revealed that R.S. is currently being monitored for seizure activity and tests are ongoing. R.S. is enrolled in an early childhood education program and receives speech, occupational, and physical therapy to address delays in her development. R.S.'s foster parents are diligent in attending to her medical needs. R.S. is well bonded to her foster parents. R.S.'s foster parents provide love and support for R.S. According to the report, the foster parents are the source of R.S.'s sense of security and are willing to adopt R.S.

¶ 9 The report indicated that mother had monthly supervised visitation with R.S. Due to R.S.'s limited vocabulary, R.S. is unable to verbalize emotions and does not reciprocate mother's enthusiasm for affection. In sum, the report recommended the court terminate mother's parental rights based on the best interest factors set forth in the Act and recommended that R.S.'s goal be changed to adoption.

¶ 10 The best interest hearing took place on November 20, 2020. The court confirmed receiving the report filed on November 6, 2020. FamilyCore caseworker, Sarah Horton, testified that she had been the caseworker on R.S.'s case since August 2020. Horton reviewed all prior reports, including permanency review reports, prior to her testimony. Horton's testimony was consistent with the contents of the report. Horton testified that R.S. has some speech delays, which are currently addressed through speech, occupational, and physical therapy. R.S.'s foster family provides R.S. with adequate community ties and carefully maintains R.S.'s family and ethnic ties.

¶ 11        Horton testified that both R.S.'s foster family and mother desired to provide permanency for R.S. Horton noted that during R.S.'s placement in her foster family, mother remained incapable of acknowledging or recognizing the safety concerns that resulted in the placement of R.S. into foster care in the first place. Horton opined that R.S.'s placement with her current foster family, rather than with mother, would be in the best interest of R.S. because of the amount of time R.S. had been in foster care.

¶ 12        Mother also testified during the best interest hearing. Mother stated that she resided in a townhouse located at 2026 South Friedan in Peoria for the last two years. The townhouse had two bedrooms. Mother had full-time employment with Aspen Dental since July 2020. Mother felt she had a strong mother-daughter bond with R.S. Mother testified that she participated in monthly one-hour visits with R.S. A typical visit would include sharing healthy snacks mother provided for R.S. In addition, mother enjoyed playing games and practicing numbers and words with R.S. during each visit. Mother stated that R.S. and mother gave each other hugs and kisses and told each other they loved one another. R.S. tells mother she misses her. Mother testified that she had fought for three years to retain parental rights to R.S. and felt that R.S. should come home with her.

¶ 13        In rebuttal, the State called R.S.'s foster mother as a witness. R.S.'s foster mother explained to the court that she transported R.S. to several supervised visits with mother. R.S. did not look forward to those visits. R.S. would tell her foster mother that R.S. did not want to go to the visits and would be inconsolable for several hours after each supervised visit.

¶ 14        Following argument, the trial court outlined the best interest factors set forth in section 1-3(4.05) of the Act (705 ILCS 405/1-3(4.05) *et seq*. (West 2018)). The court remarked that R.S. had and possibly would always have an emotional bond with mother. However, the court found

4

that R.S.'s current foster parents were meeting her needs regarding physical safety and welfare, including food, shelter, health, and clothing. The trial court also found that R.S.'s current foster placement was developing R.S.'s identity, including her familial, cultural, and religious background and ties. The court found that R.S.'s sense of love, attachment, familiarity, and security lies with her current foster family, as well as R.S.'s community ties, including church, school, and friends. The court believed R.S.'s foster parents could provide permanence for R.S. Consequently, the trial court terminated mother's parental rights, finding that the best interest factors weighed in favor of termination. Mother appeals.

¶ 15                                   II. ANALYSIS

¶ 16         On appeal, mother does not challenge the court's neglect or parental fitness findings but instead challenges the court's finding that it was in R.S.'s best interest to terminate mother's parental rights based on the statutory factors set forth in section 1-3(4.05) *et seq*. *Id*. The State argues this court should uphold the trial court's best interest finding because this finding was not against the manifest weight of the evidence.

¶ 17         It is well established that following a finding of parental unfitness, the court's focus must shift to the child's interest in "a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). At this stage, the State's burden of proof lessens to a preponderance of the evidence. *Id.* at 366. When considering whether the termination of parental rights serves the child's best interest, the court's consider: (a) the physical safety and welfare of the child, including food, shelter, health, and clothing; (b) the development of the child's identity; (c) the child's background and ties, including familial, cultural, and religious; (d) the child's sense of attachment; (e) the child's wishes and long-term goals; (f) the child's community ties; (g) the child's need for permanence; (h) the uniqueness of every family and child; (i) the risks attendant to entering and being in

substitute care; and (j) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) *et seq*. (West 2018). A trial court's finding that the termination of parental rights was in the child's best interest will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55, *In re E.F.*, 201 Ill. 2d 476, 495 (2002). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 18 Here, mother argues the trial court's best interest finding was against the manifest weight of the evidence because mother had steady, full-time employment, together with safe, stable housing, and shared a close bond with R.S. However, mother's contention that she has a strong bond and/or relationship with R.S. was contradicted by the testimony of R.S.'s foster mother.

¶ 19 The report and testimony documented that R.S.'s foster parents had been providing for R.S.'s basic needs of food, shelter, health, clothing, and education for three years. R.S. is clearly well bonded to her foster parents, where her sense of security and familiarity exist. The court properly considered that R.S.'s foster family has provided a longstanding, stable, and safe environment for R.S. and is also willing to adopt R.S., which will provide the permanency R.S.'s special needs require.

¶ 20 After carefully reviewing this record, we conclude the trial court's best interest finding was not against the manifest weight of the evidence.

¶ 21 III. CONCLUSION

¶ 22 The judgment of the circuit court of Peoria County is affirmed.

¶ 23 Affirmed.