2023 IL App (2d) 220067-U
No. 2-22-0067
Order filed March 17, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JENNA R. LASAKER | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21-OP-611 |
| | ) | |
| DENNIS KLAMCZYNSKI, | ) | Honorable |
| | ) | Jeffrey L. Hirsch, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1  *Held*:  Evidence that respondent abused petitioner supported plenary order of protection for petitioner. Respondent claimed self-defense, but the evidence on that issue was conflicting and thus did not warrant disturbing the trial court's abuse finding.

¶ 2  Respondent, Dennis Klamczynski, appeals from an order of the circuit court of McHenry County granting petitioner, Jenna R. Lasaker, a plenary order of protection against respondent. The trial court entered the order following an evidentiary hearing in which it found that respondent abused petitioner (a household member) by pushing her, which caused her to fall and seriously injure her foot and ankle. Respondent argues on appeal that the finding of abuse was against the

manifest weight of the evidence. He does not deny that he pushed petitioner, but he insists that he was acting in self-defense and, therefore, did not abuse her. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4      At the plenary-order-of-protection hearing, petitioner testified that, on August 22, 2021, she was in a dating relationship with respondent. On that date, she was at respondent's home when they had "a verbal argument that turned into physical very quickly." Respondent lunged at petitioner, grabbed her by the neck and right arm, and threw her to the floor. When she tried to get up, she noticed that her foot was "sideways." She scooted to the bedroom to get her cell phone and called 911. She was taken to a hospital where she was told that she had a dislocated foot and three fractures to her right ankle. The next day she had surgery. During her testimony, petitioner was shown photographs of the right side of her chest, right arm, right elbow, right wrist, and right side of her body. She testified that the injuries shown in the photographs resulted from the incident on August 22. She was also shown photographs of her ankle after surgery and an X-ray of her right foot after surgery. The X-ray showed plates and screws in her foot. The photographs and the X-ray were admitted into evidence but were not included in the record on appeal.

¶ 5      Petitioner testified that both she and respondent had been drinking before the incident. Respondent was intoxicated. Petitioner was not. Petitioner also testified that respondent had struck her on prior occasions. On cross-examination, petitioner denied that she had ever struck respondent with her fists or threatened him with a knife while they were dating. She did not recall what the argument was about that precipitated the incident. She denied that the reason she could not remember was that she had been extremely intoxicated. She denied punching respondent to take his phone. She also denied grabbing his phone.

¶ 6     Island Lake police officer Hector Matias responded to the incident. He testified that when he entered respondent's house, he heard screaming. He found petitioner on the floor in a bedroom, crying for help. Petitioner told Matias that her boyfriend had broken her ankle by throwing her to the ground. Matias observed that petitioner's right foot was "flopped to the side." Matias also observed scratches on petitioner's chest and right arm. Matias then spoke with respondent. Respondent told Matias that he had received a call on his cell phone, and when he told petitioner the call was from a coworker, she didn't believe him. Petitioner reached for the phone, but respondent pulled it away. Respondent went outside to make a call. Petitioner started to follow him. As she was putting on a pair of slippers to go outside, she rolled her ankle. Respondent did not mention suffering any injuries. Nor did he say anything about being threatened with a knife. Matias testified that both parties were intoxicated.

¶ 7     Respondent testified that, at 12:45 a.m. on August 22, 2021, he was in his bedroom and petitioner was in another part of the house. Petitioner was intoxicated. Respondent was not. Respondent received a call on his cell phone from a coworker, Julio, who needed advice about a problem at work. Petitioner insisted that respondent was talking to another woman. Not wanting Julio to hear petitioner's accusations, respondent hung up. Respondent left the bedroom and walked into the hall. Julio called back and petitioner "continued to be louder and more *** verbally abusive."

¶ 8     Petitioner tried to take the phone away from respondent. Respondent sat down at the kitchen table and hung up on Julio again. Petitioner then struck respondent's left cheek and took

the phone away from him. Petitioner picked up a "butter knife"[1] from the counter and "lash[ed]" at respondent with it. Respondent put his arms up to protect his face and was cut on his left arm. Respondent's attorney showed the trial court his cell phone, which purportedly displayed a photograph of the cut on respondent's arm.[2]

¶ 9      Respondent testified that, after petitioner cut him, he told her he "had enough and [was] calling the police." Respondent testified that he then "push[ed] [petitioner] to get [his] phone out of her hand." Petitioner fell, and respondent noticed that her foot had been injured. He started to call 911, but his phone was off. While the phone was starting up, petitioner scooted into the bedroom and called 911 with her own phone.

¶ 10     Respondent admitted that he did not tell Matias that petitioner threatened him with a knife. Respondent testified that he told Matias's partner about the threat.

¶ 11     The trial court found sufficient evidence that the parties were in a dating relationship at the time of the incident. The court did not expressly indicate which of the parties' testimony it found more credible. However, the court stated as follows:

---

[1]Respondent referred to the knife as a "butterfly" knife, but both the trial court and respondent's attorney referred to it as a "butter knife." The court was able to view a photograph (which is not included in the record on appeal) of the knife, and we have no reason to doubt the accuracy of the court's description. Moreover, respondent refers to it as a "butter knife" in his brief.

[2]Respondent's attorney neglected to bring a print of the photograph to court, so the photograph was not admitted into evidence and is not part of the record on appeal.

"The court [has] *** considered the photographs in assessing the credibility of the witnesses, namely, that the petitioner has presented photographs of injuries *** that appeared to corroborate her story. The respondent attempted to introduce a photograph of a cut. It's available on a phone. The court did view it. The actual photograph itself is not available to be part of the court record. But the defendant [*sic*] said that during an argument, the petitioner picked up a butter knife and flashed it at him, that is, made a striking motion towards his face, at which time he raised his left arm and was hit by the butter knife.

After that, he said that he was going to call the police, and then he said because the plaintiff [*sic*] had his cell phone, he wanted to get it, after she swung at him according to him. It was after that that he admits that he pushed her to get the cell phone.

The court finds that he did not prove that he pushed her to defend the strike from the knife. He admitted he pushed her to get the cell phone back and in doing so she fell and *** he observed her foot to be in a precarious and injurious position."

Concluding that respondent abused petitioner, the court entered a plenary order of protection effective from October 29, 2021, to October 30, 2023. Respondent filed a motion to reconsider. The trial court denied the motion, and this appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13    At the outset, we note that the statement of facts in respondent's brief violates Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), which provides that the statement of facts shall "contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal in the format as set forth in the Standards and Requirements for Electronic Filing the Record on Appeal." Respondent's statement of facts contains significant inaccuracies. For instance, the statement of

facts indicates that petitioner struck respondent repeatedly. However, respondent did not testify that petitioner struck him more than once. Moreover, the facts are not stated fairly. Respondent states, without qualification, that petitioner was intoxicated at the time of the incident, ignoring petitioner's cross-examination testimony denying that she was intoxicated.

¶ 14     Moreover, the statement of facts lacks citations to the record on appeal. That is not surprising, given that when respondent filed his brief on September 28, 2022, the record on appeal did not include a verbatim transcript (or acceptable substitute therefor) of the plenary-order-of-protection hearing. Petitioner did not file an appellee's brief, and the time for doing so expired. Thereafter, respondent moved to supplement the record with transcripts of the plenary-order-of-protection hearing and the hearing on the motion to reconsider the plenary order of protection. Respondent asserted that the transcripts were filed with the trial court on December 20, 2022. We granted the motion, and the transcripts were filed in this court on January 25, 2023, as a supplemental record. Notably, respondent has not moved to amend his statement of facts to include the requisite record citations and correct the inaccuracies that were perhaps attributable to counsel having prepared the statement of facts without the benefit of the transcripts.

¶ 15     Finally, the statement of facts improperly includes argument. Specifically, respondent makes the somewhat puzzling argument that petitioner's response to respondent's motion to reconsider (in which petitioner neither admitted nor denied certain allegations in the motion to reconsider) "is proof that [p]etitioner was severely intoxicated at the time of the incident and thus does not remember anything except what is convenient for her claim of abuse."

¶ 16     We have authority to strike a statement of facts that hinders our review. *Camelot, Inc. v. Burke Burns & Pinelli, Ltd.*, 2021 IL App (2d) 200208, ¶ 41. Although respondent's statement of

facts falls into that category, we choose not to strike it. However, we will ignore both factual assertions unsupported by the record and arguments improperly contained in the statement of facts.

¶ 17    We also note that, although petitioner has not filed an appellee's brief, the record is simple and the issues are such that we can easily decide them without the aid of an appellee's brief. Accordingly, we choose to decide the merits of the appeal. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 18    Another procedural matter that we must address before considering this appeal's merits is respondent's request that we take judicial notice of petitioner's 911 call recording. Illinois Rule of Evidence 201(b) (eff. Jan. 1, 2011) provides, "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Illinois Rule of Evidence 201(d) (eff. Jan. 1, 2011) provides, "A court shall take judicial notice if requested by a party *and supplied with the necessary information*." (Emphasis added.) Even assuming, *arguendo*, that a 911 recording otherwise meets the criteria for judicial notice, respondent has not included the recording in the record on appeal, and we lack ready access to it. Accordingly, we deny the request to take judicial notice.

¶ 19    Turning to the merits, section 214(a) of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/214(a) (West 2020)) provides:

> "If the court finds that petitioner has been abused by a family or household member ***, an order of protection prohibiting the abuse, neglect, or exploitation shall issue; provided that petitioner must also satisfy the requirements of one of the following Sections, as appropriate: *** Section 219 on plenary orders."

" 'Family or household members' include \*\*\* persons who have or have had a dating or engagement relationship[.]" *Id.* § 103(6).

¶ 20    Section 219 of the Act (*id.* § 219) provides that the trial court shall issue a plenary order of protection if (1) the petitioner has served notice of the hearing for that order on the respondent, (2) the court has jurisdiction over the respondent, (3) the requirements of section 214 are satisfied, (4) the respondent has made a general appearance or has properly been served with process, and (5) the respondent has answered or is in default. Respondent argues only that the requirements of section 214 are unmet. Specifically, respondent contends that the evidence does not establish that he abused petitioner.

¶ 21    For purposes of the Act, "abuse" includes "physical abuse" (*id.* § 103(1)), which, in turn, includes "knowing or reckless use of physical force \*\*\*" (*id.* § 103(14)(i)). Section 214(e)(1) of the Act (*id.* § 214(e)(1)) provides that a remedy under the Act shall not be denied on evidence that "[r]espondent has cause for any use of force, unless that cause satisfies the standards for justifiable use of force provided by Article 7 of the Criminal Code of 2012 [(Code) (720 ILCS 5/7-1 *et seq.* (West 2020)).]" Article 7 includes section 7-1(a) of the Code (*id.* § 7-1(a)), which provides, in pertinent part, "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force."

¶ 22    A reviewing court will reverse a finding of abuse only if it is against the manifest weight of the evidence. *Best v. Best*, 223 Ill. 2d 342, 348-49 (2006). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* at 350.

¶ 23    According to respondent, the trial court's finding that respondent abused petitioner

"is against the manifest weight of the evidence because the [p]etitioner was the aggressor who followed [r]espondent from the bedroom into the kitchen where she used her fists to repeatedly punch [r]espondent; [p]etitioner's intent to determine who [r]espondent was speaking with on his cellular telephone was aggressive and unreasonable; and [p]etitioner grabbed a butter knife on the kitchen counter and swung the butter knife at [r]espondent's face *** while [r]espondent blocked the knife with his forearm."

Thus, according to respondent, he acted in self-defense. Respondent insists that the use of force (pushing petitioner) "was necessary as he was protecting himself and trying to get his cellular telephone back from [p]etitioner so he could call the police for assistance."

¶ 24    Respondent's argument misstates the evidence. At the hearing, respondent testified that petitioner punched him once, not repeatedly. More importantly, respondent conveniently ignores petitioner's denial on cross-examination that she ever struck respondent with her fists or threatened him with a knife while they were dating. The evidence on whether respondent acted in self-defense was conflicting. Accordingly, we cannot say the trial court's finding of abuse was against the manifest weight of the evidence. In other words, in light of the conflicting evidence, we cannot say "the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best*, 223 Ill. 2d at 350.[3]

---

[3]We acknowledge that it is unclear whether the trial court credited respondent's testimony that petitioner attacked him with a butter knife. However, as noted, the court did find that, because respondent admitted pushing petitioner in order to retrieve his phone, he was not acting in self-defense. Of course, it might conceivably be argued that the court overlooked the possibility that respondent reasonably believed it was necessary to retrieve his phone in order to call the police

¶ 25                                    III. CONCLUSION

¶ 26     For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 27     Affirmed.

---

and avoid imminent harm. However, respondent merely asserts that he was seeking "assistance" from the police and develops no argument that he was in danger of imminent harm. We will not make that argument for him.