NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 260223-U

NOS. 4-26-0223, 4-26-0224 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Re. W. and Ry. W., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | Nos.  23JA86 |
| v. | ) | 23JA87 |
| Trenton W., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding the trial court's determination that respondent was depraved was not against the manifest weight of the evidence.

¶ 2    In March 2025, the State filed a petition to terminate the parental rights of respondent, Trenton W., to his minor children, Re. W. (born in February 2018) and Ry. W. (born in October 2021). Following the fitness and best-interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. (The parental rights of the minors' mother were also terminated; however, she is not a party to this appeal.) On appeal, respondent argues the court's depravity finding at the fitness hearing was against the manifest weight of the evidence. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Respondent challenges only the unfitness finding on appeal. Accordingly, we

summarize only the facts necessary to resolve the disputed issue.

¶ 5          In June 2023, the State filed shelter care petitions pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2022)), contending the minors' environment was injurious to their welfare. The petitions alleged the minors' biological mother had failed to provide proper medical care for Ry. W. Additionally, the petitions noted respondent had multiple outstanding warrants for his arrest. Following a hearing, the trial court entered a temporary custody order placing the minors in the custody of the Illinois Department of Children and Family Services (DCFS).

¶ 6          In February 2024, the trial court entered an adjudicatory order, finding the minors neglected. The court subsequently entered a dispositional order, making the minors wards of the court after finding respondent unfit to properly care for the minors due to his criminal history. Custody and guardianship of the minors were placed with DCFS, and respondent was ordered to cooperate with DCFS's directives.

¶ 7          In March 2025, the State filed a petition to terminate respondent's parental rights, alleging he was depraved (750 ILCS 50/1(D)(i) (West 2024)). The petition alleged he had five felony convictions: one for burglary, two for theft, one for criminal damage to property, and one for possessing methamphetamine. In his answer, respondent admitted to the felony convictions but denied he was depraved.

¶ 8          The matter proceeded to a fitness hearing in August 2025. The trial court admitted into evidence, without objection, certified convictions for the following felony offenses: (1) burglary in Mason County case No. 23-CF-38; (2) theft and (3) criminal damage to property in Mason County case No. 22-CF-41; (4) theft in Fulton County case No. 22-CF-107; and (5) unlawful possession of methamphetamine in Tazewell County case No. 16-CF-609.

Additionally, the court admitted into evidence, without objection, records from Sheridan Correctional Center, where respondent had been imprisoned. The correctional center records showed respondent had a history of substance abuse, including methamphetamine, cannabis, and cocaine. He also had a history of mental health issues including depression, anxiety, antisocial behaviors, impulse control disorder, and attention-deficit/hyperactivity disorder (ADHD). The records showed he had been prescribed numerous medications as part of his mental health treatment.

¶ 9        The hearing resumed in October 2025, wherein Annabelle Arnold, a caseworker, testified on behalf of the State. Arnold stated respondent was released from prison in April 2025. She said respondent had been ousted from a sober living home in Peoria, Illinois, due to testing positive for synthetic marijuana in June 2025. Arnold recalled respondent originally denied using synthetic marijuana. She said respondent had discontinued drug screenings.

¶ 10        On cross-examination, Arnold agreed respondent had maintained communication and was forthcoming. She noted he had admitted to using synthetic marijuana in open court. She stated he had completed two parenting courses while incarcerated. She had observed respondent demonstrate healthy parenting behaviors with Re. W. She did not believe he required any additional parenting courses. She stated he had completed a mental health assessment, which recommended no further treatment. She confirmed he had completed a substance abuse assessment, which recommended outpatient treatment. She explained he had "kind of given up" on participating in further drug testing. She said he had a very close bond with Re. W. She explained he did not want Ry. W. to attend in-person visits while he was incarcerated due to the minor's health issues.

¶ 11        The matter resumed in November 2025 with Carolyn Hawes, a medically

specialized foster care caseworker for Ry. W., testifying on behalf of respondent. Hawes recalled discussing Ry. W.'s medical needs with respondent. She had observed respondent demonstrate competence addressing Ry. W.'s medical needs.

¶ 12 Respondent testified on his own behalf. As for his burglary conviction, respondent said he broke in to an "abandoned house" to steal things to pay for rent and things for his children. He admitted it was wrong but explained he did not have transportation for work, so it was "easier to do the things [he] was doing." He also recalled his theft conviction in case No. 22-CF-107 was a result of him stealing catalytic converters to "make[ ] money for [his] family." Regarding the theft and criminal damage to property convictions in case No. 22-CF-41, he said he had "found some copper wire" and, when he burned off the insulation and sheathing, the police came due to the smoke. He said, because he had "found the wire," he was accused of stealing it from an "irrigation rig." He denied stealing it and reasserted he had found the wire on the side of the road. Regarding his methamphetamine conviction, he admitted he was using methamphetamine at the time. He said he had smoked cannabis "a few times" since being released from prison. While incarcerated, respondent noted he had completed multiple parenting courses and his GED test and had attained multiple certificates related to substance abuse treatment. He admitted he had received a disciplinary ticket but said a previous resident of his cell, not him, had placed "paper over the comp light," but he was punished nonetheless. He stated he was willing to attend counseling. He stated he had taken trazodone while incarcerated for sleep because of his ADHD, but he said he no longer needed it once he was released from prison.

¶ 13 On cross-examination, respondent was asked about his prison records showing a history of depression and anxiety. He admitted to having a history of anxiety but denied a history of depression. He admitted he had signed refusals for multiple mental health group treatment

services while incarcerated.

¶ 14     The trial court took the evidence and arguments from the parties under advisement, and the matter resumed in November 2025 for the court's ruling. The court noted respondent's convictions were "generally crimes of dishonesty." The court did not find respondent's explanations for his criminal convictions credible. Specifically, the court noted respondent minimized his substance abuse issues, and it did not believe respondent committed the crimes to financially support his family because he was unable to find work. The court further found respondent's denial of any depressive symptoms was not credible in light of the records showing he was dealing with extensive mental health issues. The court noted respondent tested positive for synthetic marijuana after his release and had been "hanging out with unsavory characters and poor influences." The court reiterated its concerns about respondent's substance abuse issues and stated he had not overcome a depravity finding. The court said it had observed respondent's demeanor in court and described him as "someone who was barely able to exhibit self-control." In the court's opinion, respondent did not behave as a rehabilitated individual. The court noted respondent had been incarcerated for half of Ry. W.'s life. The court said that although respondent seemed to love his children, that was "simply not sufficient." The court found the State had met its burden by clear and convincing evidence of proving respondent was depraved.

¶ 15     The matter proceeded to a best-interest hearing on January 14, 2026, after which the trial court stated it had considered the best-interest factors in light of the evidence. The court noted respondent's condition had declined since the fitness hearing, as he was struggling with substance abuse. The court described respondent's speech as mumbled and his behavior as fidgety. The court observed respondent had lost weight and his skin was ashy and pale. The court noted respondent had failed to engage in services and to maintain sobriety while experiencing "new

arrests and just general instability." The court found the State had proven by a preponderance of evidence it was in the minors' best interest to terminate respondent's parental rights.

¶ 16　　　　This appeal followed.

¶ 17　　　　　　　　　　　　II. ANALYSIS

¶ 18　　　　On appeal, respondent argues the trial court's depravity finding at the fitness hearing was against the manifest weight of the evidence. Specifically, he notes the evidence showed he completed, *inter alia*, two parenting courses, drug and alcohol treatment, his GED, and a mental health evaluation, which recommended no follow-up services. He also notes Arnold's and Hawes's testimonies showed his bond with the minors and his ability to properly parent them. He contends his testimony showed he only committed the crimes out of desperation to provide for his family. He also argues the court's emphasis on his mental health records from prison was misguided, given his post-release achievements. Further, he notes his court-ordered mental health evaluation did not recommend any follow-up services. For these reasons, he claims, the court erred in finding him unfit.

¶ 19　　　　Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(i) of the Adoption Act, a rebuttable presumption that a parent is depraved may be found where he or she has been "convicted of at least 3 felonies under the laws of this State *** and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2024). "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne*

*P.*, 215 Ill. 2d at 354. A finding is against the manifest weight of the evidence when the opposite result is clearly evident. *In re Audrey B.*, 2015 IL App (1st) 142909, ¶ 32.

¶ 20    As we noted earlier, section 1(D)(i) of the Adoption Act creates a rebuttable presumption a parent is depraved if that parent has been criminally convicted of at least three felonies, with at least one of the convictions taking place within five years of the petition to terminate parental rights. 750 ILCS 50/1(D)(i) (West 2024). "However, once evidence opposing the presumption comes into the case, the presumption ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed." *In re J.A.*, 316 Ill. App. 3d 553, 562 (2000).

¶ 21    Aside from the presumption that arises with the felony convictions, depravity can also be defined as " 'an inherent deficiency of moral sense and rectitude.' " *Id.* at 561 (quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952)). "Depravity of a parent may be shown by a series of acts or a course of conduct that indicates a moral deficiency and an inability to conform to accepted morality." *In re Dawn H.*, 281 Ill. App. 3d 746, 757 (1996).

¶ 22    Respondent's felony convictions created a rebuttal presumption of his depravity. However, once he presented evidence, largely through his own testimony, that he was no longer depraved, the presumption ceased. The trial court could then determine the issue of respondent's depravity based solely on the evidence presented at the fitness hearing. Respondent contends the court relied primarily on his mental health records from prison to find he was depraved. This is incorrect. The court found respondent's explanations for his criminal conduct incredible. His lack of credibility was only further corroborated by the conflicts in his own testimony and his mental health records from prison.

¶ 23    We agree with respondent the evidence showed numerous accomplishments while

he was incarcerated, and the testimonies of Arnold and Hawes also corroborated his improvement as a parent. However, the trial court's finding he lacked credibility is also supported by the record. This court will not substitute its judgment for the court's judgment on matters of credibility. *Best v. Best*, 223 Ill. 2d 342, 350-51 (2006). The court correctly identified respondent's minimization of his substance abuse issues and found his attempts to explain away his criminal conduct were unbelievable. The court also correctly noted respondent's criminal history demonstrated a pattern of dishonesty. Respondent's incredible testimony served only to bolster the court's conclusion. Accordingly, we cannot say the opposite result was clearly evident. Therefore, we conclude the court's depravity finding was not against the manifest weight of the evidence.

¶ 24                                  III. CONCLUSION

¶ 25          For the reasons stated, we affirm the trial court's judgment.

¶ 26          Affirmed.