**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210075-U

Order filed May 14, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* K.C., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0075 |
| | ) | Circuit No. 19-JA-216 |
| v. | ) | |
| | ) | |
| Kadeedra C., | ) | Honorable |
| | ) | Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justices Daugherity and O'Brien concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court's best interest finding was not against the manifest weight of the evidence.

¶ 2     Mother, Kadeedra C., appeals from an order of the circuit court terminating mother's parental rights as to K.C. On appeal, mother argues the circuit court's ruling was against the manifest weight of the evidence.

I. BACKGROUND

¶ 4        On July 10, 2019, the State filed a petition for adjudication of wardship (neglect petition) alleging that K.C. (D.O.B. 5/06/2019) was neglected due to an environment injurious to K.C.'s welfare pursuant to section 2-3 of the Juvenile Court Act of 1987 (Act). 705 ILCS 405/2-3 *et seq*. (West 2018). The neglect petition alleged that mother has substance abuse and mental health issues, including bipolar disorder, and that mother is homeless and is currently in the Livingston County Jail. The neglect petition alleged that during one of K.C.'s doctor's appointments on July 2, 2019, mother informed the physician that she was unclear about the amount of formula to give K.C. and that she sometimes gives K.C. just water. Mother reported to the physician that she co-sleeps with K.C. on mother's stomach.

¶ 5        The petition alleged that on July 7, 2019, while extremely intoxicated, mother dropped or threw K.C. out of a car seat face-first onto the concrete, causing injury. The neglect petition further alleged that mother was previously indicated by the Department of Children & Family Services (DCFS) in February 2017 for cuts, welts, and abrasions, that mother did not have custody of her four other children, that in January 2017 mother whipped K.C.'s sibling with a cord, and that mother had a criminal history, including possession of controlled substances.

¶ 6        On October 21, 2019, mother stipulated to the allegations levied in the petition and the court adjudicated K.C. neglected. The court proceeded with a dispositional hearing immediately following the adjudicatory hearing. After the hearing, the court found mother unfit, ordered mother to complete several court-ordered services, and made K.C. a ward of the court.

¶ 7        On October 16, 2020, the State filed a petition to terminate mother's parental rights (termination petition), alleging mother was an unfit person as defined under section 50/1(D)(m)(ii) of the Adoption Act because she failed to make reasonable progress toward the

return of the minor during the nine-month period following the adjudication of neglect, being October 21, 2019, to July 21, 2020. 750 ILCS 50/1(D)(m)(ii) (West 2018). On November 17, 2020, Lutheran Social Services of Illinois filed a best interest report (report) in the matter. The report provided that one-year-old K.C. had been with her foster placement since July 10, 2019, when K.C. was two months old. Due to K.C.'s age, she does not understand her living situation. Life in K.C.'s current placement is the only life K.C. has ever known. In her current placement, K.C.'s basic needs of food, shelter, health, and clothing are met. The caseworker, who had at least twice monthly contact with K.C. and her foster mother, observed the foster mother's home to have adequate food and be in a good state of repair. K.C. is in good health, and K.C.'s foster mother is diligent about ensuring K.C. attends medical examinations. K.C. has progressed well through developmental milestones and demonstrates the developmental abilities of a child at or above K.C.'s age.

¶ 8 The report stated that K.C. had little to no relationship with mother. Mother had not attended a supervised visit since November 2019. Otherwise, mother, who lives in Springfield, Illinois, came to Peoria "sporadically" and has seen K.C. in her foster home very briefly. K.C. cries when mother holds K.C. In contrast, the report documented K.C.'s strong relationship with her foster mother, who loves K.C. as if K.C. is her own child. K.C.'s foster family adores K.C., and K.C. was observed smiling, laughing, and snuggling with her foster mother.

¶ 9 The report concluded that K.C.'s sense of security and familiarity, and K.C.'s need for permanency, favored continued placement in her current foster home. Thus, the caseworker recommended it was in K.C.'s best interest to terminate mother's parental rights and that K.C.'s permanency goal be set for adoption.

¶ 10    On February 9, 2021, the court conducted an adjudication/best interest hearing. Mother did not attend the hearing. Lutheran Social Services caseworker, Katrina Vroman, testified that she had been K.C.'s caseworker since the case opened in July 2019. Vroman testified that between October 21, 2019, and July 21, 2020, mother failed to engage in a parenting class, counseling, a psychological evaluation, a domestic violence class, a substance abuse assessment, or drug drops. Based on this uncontroverted testimony, the circuit court found the State's termination petition proven by clear and convincing evidence and the matter proceeded to a best interest hearing.

¶ 11    During the best interest hearing, the court noted that it had received the report. Following cursory argument, the court found that the best interest factors, outlined in section 1-3(4.05) of the Act, favored termination of mother's parental rights. 705 ILCS 405/1-3(4.05) *et seq*. (West 2018). The court set K.C.'s permanency goal for adoption. Mother appeals.

¶ 12                                  II. ANALYSIS

¶ 13    On appeal, mother does not challenge the court's neglect or parental fitness findings but instead challenges the court's finding that it was in K.C.'s best interest to terminate mother's parental rights based on the statutory factors set forth in section 1-3(4.05) of the Act. The State argues this court should uphold the circuit court's best interest finding where the court's finding was not against the manifest weight of the evidence.

¶ 14    It is well established that following a finding of parental unfitness, the court's focus must shift to the child's interest in "a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). At this stage, the State's burden of proof lessens to a preponderance of the evidence. *Id.* at 366-67. When considering whether the termination of parental rights serves the child's best interest, court's consider: (a) the physical safety and welfare of the child, including food, shelter, health,

4

and clothing; (b) the development of the child's identity; (c) the child's background and ties, including familial, cultural, and religious; (d) the child's sense of attachment; (e) the child's wishes and long-term goals; (f) the child's community ties; (g) the child's need for permanence; (h) the uniqueness of every family and child; (i) the risks attendant to entering and being in substitute care; and (j) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) *et seq.* (West 2018). A trial court's finding that the termination of parental rights was in the child's best interest will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 15 Here, mother argues that because mother had previous visits with the minor, and held the minor, it is not in K.C.'s best interest to terminate mother's parental rights. We disagree. The report in this case revealed that K.C. resides in a safe, loving home. Importantly, this loving home is the only home K.C. has ever known. K.C.'s foster mother makes sure K.C.'s basic needs of food, shelter, health, and clothing are met. K.C. is in good health and has progressed well through developmental milestones. K.C., like any child, thrives when afforded permanence and stability, both of which foster mother is providing for K.C.

¶ 16 The record demonstrates that mother has taken little interest in restoring herself to fitness by completing court-ordered tasks. Here, mother failed to complete court-ordered services and did not attend the best interest hearing, despite knowledge of the hearing. For these reasons, we affirm the circuit court's order terminating mother's parental rights.

## III. CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.