[No. 5074–1. Division One. May 31, 1977.]

*In the Matter of the Guardianship of*
SHEILA ANDERSON.

SHEILA ANDERSON, *Petitioner, v.* DORA
ANDERSON, *Respondent.*

*MacDonald, Hoague & Bayless, Kenneth A. MacDonald,*
and *Richard Emery,* for petitioner.

*Sweet & Dussault* and *William L. E. Dussault,* for
respondent.

FARRIS, C.J.—Sheila Anderson appeals from an order of
the Superior Court, entered pursuant to a petition from her
guardian, placing her in Fairfax Hospital for a 30–day
"evaluation" period.

The appeal raises the narrow question of whether RCW 72.23.070(4) may be used by a limited guardian, acting pursuant to RCW 11.92.040, to obtain residential mental health care for a nonconsenting ward. We hold that it may not. In so holding, we recognize that the question of whether the ward is committable pursuant to RCW 71.05 is not before the court. We therefore do not reach the question of whether the record establishes that the ward is gravely disabled or dangerous to herself or others.

It is not disputed that Sheila Anderson, the ward, is in need of a limited guardian. RCW 11.92.040 provides:

> It shall be the duty of the guardian and limited guardian
>
> . . .
>
> (3) If he is a guardian or limited guardian of the person, to care for and maintain the incompetent, . . .

In the reasonable discharge of her duties, the guardian twice sought to have the ward involuntarily committed pursuant to RCW 71.05. Both tries were unsuccessful. No appeal was taken from either proceeding wherein it was held that the ward presented no "likelihood of harm to self or others." (It appears that the question of whether she was gravely disabled was not raised.) Instead, pursuant to paragraph 3 of the order appointing limited guardian, the guardian thereafter sought the court's approval of the ward's placement at Fairfax Hospital for a 30–day observation period. Paragraph 3 provides:

> The Limited Guardian shall explore and determine an appropriate residential facility placement for Sheila Anderson and present details on that proposed placement to this court and the disabled person's Guardian Ad Litem for approval.

We recognize that the order of placement merely required the ward to submit to hospitalization for a term certain (30 days) for the limited purpose of determining "whether Sheila Anderson's present choice of life–style is made freely, knowingly and intelligently or whether it is the product of some degree of mental incapacity." However,

neither the scope of the order nor the procedures followed in framing it comport with RCW 71.05.150 which prescribes the exclusive procedures and standards for the initial detention of a mentally disabled person for evaluation and treatment. *See also* RCW 71.05.180, .210.

In Washington, the involuntary commitment of a person who has committed no crime against society requires a finding that the person is either "gravely disabled" or poses a likelihood of serious harm to self or others, as defined by RCW 71.05.020(1) and (3), respectively. *See* RCW 71.05-.150, .230, .240, .280, and .320. The constitutional standard was provided in *In re Levias*, 83 Wn.2d 253, 257, 517 P.2d 588 (1973):

> Since the police power of the state is focused upon securing the safety of its citizenry, neither logic nor law permits any supportive basis for the involuntary incarceration of persons *who are not unsafe.* Weighed against the fundamental liberties at stake in commitment proceedings, the interest of the state in the commitment of nondangerous persons is less than compelling.[3]

> [3] "The only freedom which deserves the name, is that of pursuing our own good in our own way, so long as we do not attempt to deprive others of theirs or impede their efforts to obtain it. Each is the proper guardian of his own health, whether bodily, or mental and spiritual. Mankind are greater gainers by suffering each other to live as seems good to themselves, than by compelling each to live as seems good to the rest."
> J. Mill, *On Liberty* 18 (1962).

While RCW 72.23.070 permits public or private health facilities to accept "any person . . . suitable . . . for care and treatment as mentally ill, or for observation as to the existence of mental illness, . . ." who applies for admission individually or through their court–appointed guardian, we cannot expand that statute to permit involuntary incarceration.

We recognize the serious nature of the allegations made by the guardian. The court on appeal, however, does not decide factual questions. In a proper case, when factual

findings are made, we will not hesitate to determine whether those facts support a conclusion that the ward is "gravely disabled" or poses "likelihood of serious harm to self or others." That question, however, is not now before us.

Reversed.

SWANSON and ANDERSEN, JJ., concur.

Reconsideration denied September 28, 1977.

Review by Supreme Court pending April 14, 1978.