*In re* RONALD EUGENE GARDNER (The People of the State of Illinois, Petitioner-Appellee, *v.* Ronald Eugene Gardner *et al.*, Respondents-Appellants).

Fourth District   No. 4—82—0337

Opinion filed January 12, 1984.

Jeff M. Plesko and Ann E. Hymowitz, both of Guardianship & Advocacy Commission, of Champaign, for appellants.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

This action arose on a petition for involuntary commitment of the respondent to a mental health facility. Respondent was alleged to be

subject to involuntary admission under the Mental Health and Developmental Disabilities Code (MHDDC) (Ill. Rev. Stat. 1981, ch. 91½, par. 3—700 *et seq.*). During the hearing, the court determined that the Illinois Office of State Guardian had been appointed plenary guardian of the respondent in a prior proceeding. The court then recessed the case, ordered the Illinois Office of State Guardian made a party and, after further hearing, ordered the Office of State Guardian to execute an application to admit respondent as a voluntary patient to the mental health facility. The court relied on the guardian's authority under the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—1 *et seq.*). The guardian appealed, alleging that the trial court lacked authority to enter such an order. We agree with the guardian and reverse.

On April 22, 1982, a petition was filed in the circuit court of Macon County alleging that respondent was mentally ill and as a result was unable to provide for his basic needs so as to protect himself from serious harm. Two certificates of examination were filed along with the petition. In these certificates, a physician and a social worker on the staff at Meyer Mental Health Center detailed their observations which lead them to conclude that respondent was mentally ill and subject to involuntary admission. A hearing was held on the petition. Dr. Thomas Radecki, the staff physician at Meyer who filed the certificate in this case, testified regarding respondent's mental condition. In Radecki's opinion, respondent is mentally ill. Respondent has been diagnosed as having a chronic low-level psychosis; he is not immediately dangerous to himself or others, but he would be unable to fend for himself in society. He is totally lacking in judgment and understanding about the "outside" world. He has no rational discharge plans and has not done well on home visits.

Dr. Radecki also testified that respondent suffers from delusions. He makes frequent paranoid statements, which can be summarized as a belief that staff members at Meyer are going to kill him and raise him from the dead. He repeats these statements constantly during the day; however, Radecki does not consider respondent to be "acutely suicidal." Radecki further testified that repetition of such bizarre statements is a sign of some organic abnormality in the nervous system. Radecki stated that the prognosis for respondent is not very good; Radecki was not optimistic regarding respondent's chances of returning to a normal mental state in the near future.

Lawrence Melka, social worker at Meyer, echoed Dr. Radecki's findings. Shirley Paceley, a mental health worker at Meyer, advised the court that the Office of State Guardian (OSG) is respondent's

guardian, having been appointed in an earlier proceeding. Paceley indicated that OSG refused to sign the forms necessary to recommit respondent as a voluntary admittee. She stated that she was informed that OSG had a policy of refusing to apply for voluntary admission of its ward to Meyer if the ward refused to cooperate.

Judge Davis then ordered that OSG be added as a party respondent and that the remainder of the hearing be postponed until April 30. During the April 30 hearing, OSG stipulated that it was the plenary guardian of the respondent, Ronald Gardner. On its own motion, the trial court ordered OSG to consent to the voluntary admission of respondent to the Department of Mental Health. Ann Hymowitz, attorney for OSG, objected to the trial court's order, contending that OSG did not have authority under the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 1—1 et seq.) and the MHDDC (Ill. Rev. Stat. 1981, ch. 91½, par. 1—100 et seq.) to consent to a voluntary admission of its ward. Judge Davis disagreed, likening this situation to the ability of the guardian to consent to medical treatment for the ward and held that his order did not contravene the protections of the MHDDC.

Respondent contends that a plenary guardian appointed pursuant to the adult guardianship provisions of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—1 et seq.) lacks the power to execute an application for voluntary admission to a mental health facility. Respondent maintains that a grant of such power would contravene the involuntary commitment provisions of the MHDDC (Ill. Rev. Stat. 1981, ch. 91½, par. 3—700 et seq.). The State contends that OSG, as respondent's plenary guardian, has the power, pursuant to court order, to execute an application for voluntary admission on respondent's behalf. The State relies heavily on section 11a—17 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—17). Section 11a—17 outlines the duties of a court-appointed personal guardian. Section 11a—17 provides in pertinent part:

> "To the extent ordered by the court and under the direction of the court, the guardian of the person shall have custody of the ward and his minor and adult dependent children; shall procure for them and shall make provision for their support, care, comfort, health, education and maintenance and such professional services as are appropriate ***."

OSG's counsel conceded at trial that, under this provision, a guardian may order medical treatment for the disabled party without that party's consent.

The power of a plenary guardian to procure psychiatric treatment

for a mentally ill ward has never been the subject of a published opinion in Illinois. In fact, the only reported consent case decided under section 11a—17 is *In re Adoption of Savory* (1981), 102 Ill. App. 3d 276, 430 N.E.2d 301. In *Savory*, petitioner sought to adopt a disabled adult whose plenary guardian was OSG. OSG refused to consent and the trial court dismissed the petition. The issue presented upon appeal was whether the refusal of OSG to consent to the adoption of a disabled person under its control negated the trial court's jurisdiction over the petition to adopt.

The Third District reversed and remanded for a new hearing. The court held that, in the case of a disabled person, the power to consent to adoption rests in that person's guardian. The court based its decision on the broad language of the Probate Act of 1975 empowering the plenary guardian to make all necessary decisions concerning the ward's development toward self-reliance and independence. Given that authority, the trial court agreed that the adult's consent to adoption proceedings vested in the guardian upon appointment. The court concluded that the guardian's refusal to consent to the adoption petition will not summarily divest the circuit court of jurisdiction to review the State Guardian's decision not to consent.

The State argues that if a plenary guardian has the power to consent to open-heart surgery to save the ward's life and has the power to consent to the adoption of its wards, then it seems logical that a guardian should, subject to court approval, have the authority to seek psychiatric care and treatment for a mentally ill ward. The State argues that such power can easily be inferred from the broad language of section 11a—17 placing upon the guardian the duty of providing for the health and care of the ward and providing professional services where such services would be appropriate.

Construing section 11a—17 in that manner would place it into conflict with the MHDDC (Ill. Rev. Stat. 1981, ch. 91½, par. 3—100 *et seq.*). Section 3—200 of the MHDDC provides that a person may be admitted as an in-patient to a mental health facility only as provided in the Code. By enacting section 3—200 the legislature has clearly provided that the MHDDC is to be the exclusive means by which a mentally ill person is admitted to a mental health facility. The Code contains an elaborate and complex system of procedures designed to protect the rights of the mentally ill. By bypassing the procedures for involuntary commitment set forth in the Code, the trial court has denied respondent the rights guaranteed under those provisions.

It is not clear from the record why the court, *sua sponte*, ordered OSG to execute a voluntary application for admission. An inference

may be drawn, however, that the State's evidence was insufficient to meet the standard of proof necessary to justify an involuntary commitment. However, the inability of the State to meet its burden of proof for an involuntary commitment does not empower the court to disregard the legislative scheme contained in the MHDDC.

■ Petitioner argues that section 11a—14.1 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—14.1) allows the trial court to enter the order which was entered in the case at bar. We disagree. Section 11a—14.1 prohibits placement of a ward in a "residential facility" without prior authorization by the trial court. To expand the definition of "residential facility" to include mental health facilities, in view of section 3—200 of the MHDDC, would bring the Probate Act of 1975 into conflict with that provision of the Code. Furthermore, such a construction would be contrary to the purpose of section 11a—14.1, which is to prevent the warehousing of disabled adults in substandard conditions when they do not qualify for entry into a mental health facility under the direct control of the State. See Jost, *The Illinois Guardianship for Disabled Adults Legislation of 1978 and 1979: Protecting the Disabled from Their Zealous Protectors*, 56 Chi. Kent L. Rev. 1087, 1101 (1980).

A similar situation was presented in *In re Limited Guardianship of Anderson* (1977), 17 Wash. App. 690, 564 P.2d 1190. In that case, the court was presented with the narrow question of whether a guardian appointed under the Washington Probate Act could obtain "voluntary" residential mental health care for a nonconsenting ward under the Public and Private Facilities for the Mentally Ill Act rather than under the State Mental Health Code.

The Washington Mental Health Code provided that a ward may be committed if he is gravely disabled or dangerous to himself or others. The guardian twice sought to have the ward involuntarily committed pursuant to the Mental Health Code, but was unsuccessful because he had not demonstrated that the ward presented a likelihood of harm to herself or others.

The appellate court, however, found that the Mental Health Code prescribed the exclusive procedures and standards for an initial detention of a mentally disabled person and therefore, placement by a guardian under a voluntary placement statute when the ward did not consent was precluded. The court found that the interest of the State in the commitment of nondangerous persons was less than compelling when weighed against the fundamental liberties at stake in commitment proceedings. While the statute under which the guardian sought placement permitted public or private health facilities to accept any

persons suitable for care or treatment as mentally ill who applied for admission individually or through the court-appointed guardian, the court refused to expand the reach of that statute to permit involuntary incarcerations.

We find the reasoning of the Washington court in *Anderson* to be sound. Therefore, we hold that a guardian appointed under the Probate Act of 1975 does not have the power to admit a nonconsenting ward to a mental health facility for treatment as a voluntary patient. To grant such a power to the guardian would contravene the exclusivity provided in section 3—200 of the MHDDC. The trial court's order requiring OSG to execute a voluntary application for mental health treatment on respondent's behalf was clearly erroneous.

The judgment of the circuit court of Macon County is reversed.

Reversed.

MILLS, P.J., and TRAPP, J., concur.