NO. 4-02-0148

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Matter of the Guardianship of

SANDRA MUELLNER, a Disabled Adult,

Respondent-Appellant,

v.

BLESSING HOSPITAL,

Petitioner,

and

OFFICE OF STATE GUARDIAN,

Petitioner-Appellee.

)

)

)

)

)

))))

Appeal from

Circuit Court of

Adams County

No. 01P228

Honorable

Thomas J. Ortbal,

Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE MYERSCOUGH delivered the opinion of the court:

In January 2002, the trial court found respondent, Sandra Muellner, to be a disabled adult and appointed petitioner, the Office of State Guardian (State Guardian), as limited guardian of her person.  Respondent appeals, arguing the trial court erred in authorizing the State Guardian to place her in a nursing home's behavioral unit without proceeding for her involuntary commitment under chapter III of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3-100 through 3-1003 (West 2000)).

I. BACKGROUND

In September 2001, respondent was 55 years old and resided in Hotel Quincy Apartments.  The manager noticed respondent holding a towel in her arms and acting like she had a baby.  A maid convinced respondent to go to Blessing Hospital (Blessing), where she was voluntarily admitted as an inpatient to an adult psychiatric unit.  In October 2001, Melissa Penn, a social worker at Blessing, filed a guardianship petition and a petition for temporary guardianship.  Penn alleged respondent was a disabled person
 because she was unable to care for herself and she suffered from chronic paranoid schizophrenia with delusions.  The petitions sought to appoint the State Guardian as guardian of respondent's person with authority to make residential placement.  The trial court appointed the State Guardian as respondent's temporary guardian for up to 60 days.  The trial court authorized the State Guardian to make residential placement.

In November 2001, the State Guardian, as respondent's temporary guardian, placed respondent with New Horizons in Sycamore Health Care (Sycamore), a 24-hour skilled nursing facility.  New Horizons is a behavioral unit that works to stabilize psychiatric patients.  It has an in-house psychiatrist and offers group therapy classes.  The facility is not locked, but access to other areas of Sycamore or the outside community is restricted until the resident gains levels of trust.

In January 2002, the trial court held a hearing on Penn's guardianship petition.  Dr. Lee Johnson, a psychiatrist, treated respondent for schizophrenia.  Dr. Johnson noted that respondent rarely took prescribed medication.  Julie Irvine of the West Central Illinois Center for Independent Living testified for respondent.  Irvine stated respondent was capable of living independently in the community with visits by personal assistants to her home.  Respondent filed a motion to limit the proposed guardian's power to place her in a nursing home.  After taking the matter under advisement, the trial court denied respondent's motion as moot and appointed the State Guardian as limited guardian of respondent's person.  The trial court granted the State Guardian authority to place respondent in a group home, shelter-care facility, or in the community.  The trial court conditioned the State Guardian's authority to residentially place respondent in a skilled-care nursing facility; the State Guardian had to determine that respondent's placement in a less restrictive environment would cause substantial harm to her.

This appeal followed. 

II. ANALYSIS

Respondent argues the trial court erred in authorizing the State Guardian to place her in a nursing home's behavioral unit without proceeding for her involuntary commitment under chapter III of the Mental Health Code (405 ILCS 5/3-100 through 3-1003 (West 2000)).

A. Mootness

The State Guardian concedes error under the facts of this case but contends we should dismiss the present appeal as moot.  In its brief,
 the State Guardian informed this court that it allowed respondent to return to her residence, and the State Guardian has also given this court its assurance that respondent will not be returned to New Horizons except to the extent allowed under the Mental Health Code.

Respondent asserts this appeal is not moot for the following reasons.  Respondent suggests the trial court could appoint a substitute guardian or compel the State Guardian to place respondent in New Horizons or another mental health facility.  Citing 
In re Stephenson
, 67 Ill. 2d 544, 367 N.E.2d 1273 (1977), respondent also contends the "mental health exception" to mootness applies.  Finally, respondent claims the "substantial public interest exception" to mootness applies.

Although the appellate court has recognized a general exception to mootness for mental health cases (see, 
e.g.
, 
In re Slaughter
, 253 Ill. App. 3d 718, 721-22, 625 N.E.2d 832, 834 (1993)), our supreme court has not embraced that exception.  See 
In re Barbara H.
, 183 Ill. 2d 482, 491, 702 N.E.2d 555, 559 (1998).  Instead, we determine that the public interest exception to mootness applies.

Three factors determine whether the public interest exception applies:  "(1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will generally recur."  
In re A Minor
, 127 Ill. 2d 247, 257, 537 N.E.2d 292, 296 (1989).  
Whether the State Guardian may admit a ward to a nursing home's behavioral unit for treatment of mental illness is a question of a public nature.  An authoritative determination is very important because involuntary admission to a mental health facility implicates a ward's liberty interest.  
Finally, the question is likely to generally recur, given that other mentally ill wards reside in this state and the State Guardian has limited its concession to the particular facts of this case.

Accordingly, we address the merits.

B. Nursing Home as a Mental Health Facility

Section 11a-3(a) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11a-3(a) (West 2000)) authorizes a trial court to appoint a guardian for a disabled person.  
A guardian of the person has custody of the ward.  755 ILCS 5/11a-17(a) (West 2000).  The guardianship order may specify the conditions on which the guardian may admit the ward to a residential facility without further court order.  755 ILCS 5/11a-14.1 (West 2000).
  However, a trial court may not grant a guardian the power to admit a nonconsenting ward to a mental health facility for treatment as a voluntary patient.
  
In re Gardner
, 121 Ill. App. 3d 7, 12, 459 N.E.2d 17, 20 (1984). 
 
Section 3-200(a) of the Mental Health Code (405 ILCS 5/3-200(a) (West 2000)) provides that "[a] person may be admitted as an inpatient to a mental health facility for treatment of mental illness only as provided in" chapter III of the Mental Health Code.

In the present case, the trial court authorized the State Guardian to admit respondent to a skilled-care nursing facility
, and the State Guardian placed respondent in New Horizons, which is a behavioral unit of a skilled-care nursing facility
.  Although the State Guardian has confessed error, this court is not bound by a confession of error.  
People v. Lavallier
, 298 Ill. App. 3d 648, 649, 698 N.E.2d 704, 705 (1998).  Therefore, we decide whether a nursing home's behavioral unit qualifies as a "mental health facility" under the Mental Health Code.

Section 1-114 of the Mental Health Code (405 ILCS 5/1-114 (West 2000)) defines "mental health facility" as:

"any licensed private hospital, institution, or facility or section thereof, and any facility, or section thereof, operated by the State or a political subdivision thereof for the treatment of persons with mental illness and includes all hospitals, institutions, clinics, evaluation facilities, and mental health centers which provide treatment for such persons."

Section 1-113 of the Mental Health Code (405 ILCS 5/1-113 (West 2000)) defines "licensed private hospital" as:

"any privately owned home, hospital, or institution, or any section thereof which is licensed by the Department of Public Health and which provides treatment for persons with mental illness."

The State Guardian claims that the definition of "mental health facility" is limited to those facilities with a "primary purpose" of treating mental illness.  
Amicus
 
curiae
 suggests that any nursing home may become a "mental health facility" if a single mentally ill person is admitted for mental health treatment.  We reject these interpretations because they depart from the plain language of section 1-114.  See 
People v. Ellis
, 199 Ill. 2d 28, 39, 765 N.E.2d 991, 997 (2002).

Instead, we determine that New Horizons qualifies under the "licensed private hospital" portion of the definition of a "mental health facility" in section 1-114 of the Mental Health Code.  
As this court noted in 
In re Moore
, 301 Ill. App. 3d 759, 766, 704 N.E.2d 442, 446 (1998), sections 1-113 and 1-114 of the Mental Health Code recognize that a facility may have sections for the treatment of mentally ill persons. 
 The record shows that Sycamore is licensed by the Illinois Department of Public Health and New Horizons, a section of Sycamore, provides treatment for persons with mental illness.

Therefore, the trial court erred in permitting the State Guardian to place respondent in a mental health facility without requiring the State Guardian to proceed under the Mental Health Code.

 
 
 
 III. CONCLUSION

For the reasons stated, we reverse the portion of the trial court's limited guardianship order that authorizes the State Guardian to place respondent in a skilled-care nursing facility to the extent it allows the State Guardian to admit respondent to a mental health facility without complying with the Mental Health Code.  We affirm the trial court in all other respects and direct the trial court on remand to enter an order restricting the State Guardian's authority to admit respondent to a mental health facility without complying with the Mental Health Code.

Affirmed in part and reversed in part; cause remanded with directions.

KNECHT and APPLETON, JJ., concur.