# Illinois Official Reports

## Appellate Court

---

### *In re Commitment of Hans T.*, 2021 IL App (2d) 180387

---

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF HANS T. (The People of the State of Illinois, Petitioner-Appellee, v. Hans T., Respondent-Appellant). |
| District & No. | Second District<br>No. 2-18-0387 |
| Filed | August 4, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 18-MH-21; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Veronique Baker, Laurel Spahn, and Ann Krasuski, of Legal Advocacy Service, of Hines, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Mary A. Fleming, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Hudson concurred in the judgment and opinion. |

¶ 1      Respondent, Hans T., appeals from the trial court's order subjecting him to involuntary admission on an outpatient basis, under which he was required to reside in a locked unit of a nursing home for 180 days. Respondent argues that the order was essentially for involuntary admission on an inpatient basis, without the statutory procedures and findings necessary to impose such an order, and for twice the time permitted for an initial involuntary inpatient admission. He recognizes that the issue is now moot, but he argues that exceptions to the mootness doctrine apply. We agree with respondent and therefore reverse the trial court's order.

¶ 2      I. BACKGROUND

¶ 3      On January 16, 2018, personnel from Central Du Page Hospital filed documents seeking involuntary outpatient admission of respondent. They alleged that he was a person with a mental illness that, if left untreated, was reasonably expected to result in an increase in symptoms to the point that he would meet the criteria for commitment and whose illness had more than once caused him to refuse needed and appropriate mental health services in the community. See 405 ILCS 5/1-119.1 (West 2018). They alleged that respondent had been admitted to inpatient treatment several times and that he returned because he was unable to function in his home, in that he was noncompliant with his medications and aggressive with his mother, Maria T. Dr. Richard Wagner opined that respondent had schizophrenia and that he was chronically psychotic and incapable of making decisions necessary to keep himself safe.

¶ 4      On January 18, 2018, the State filed a motion for the care and custody of respondent and for community placement, alleging as follows. Respondent had been diagnosed with chronic mental illnesses, including schizophrenia with psychosis and other psychotic disorders, and was presently hospitalized at Central Du Page Hospital. He was paranoid and lacked the judgment and insight to take care of himself. He discontinued the use of his prescribed psychotropic medications, which made him psychotic, delusional, and paranoid to the extent that he was unable to care for his basic needs and was a potential danger to himself and others. Therefore, he met the criteria for involuntary admission on an outpatient basis. The State sought to place respondent in a residential facility upon discharge from the hospital, as recommended by his treatment team, and have respondent's mother named as his custodian. The attached treatment plan stated that he was to take all prescribed medications, which it listed.

¶ 5      A hearing took place on February 9, 2018. Respondent's mother testified that respondent was 33 years old and lived with her. He had been suffering from mental illness since he was about 22 years old. His symptoms included having no "control" of his room, not bathing, sleeping all day, and having an irritable attitude. He asked her to do things all the time in a demanding manner, which made her feel scared. Respondent had been to the hospital more than five times for his mental illness. He had also lived in the Warren Park nursing home for two years and was stable there, but at home he would forget to take his medications. Respondent's mother was not willing to let respondent return home with her and preferred that he go to a nursing home. She thought that the nursing home staff would be in charge of him, and she would go and visit.

¶ 6 Amanda Nadr testified that she was respondent's social worker at Central Du Page Hospital. In relevant part, she testified that the hospital staff was recommending that respondent be placed at the Aperion Care Center (Aperion) in West Chicago, which was an intermediate care facility that provided psychosocial rehabilitation for people with mental health needs. Nadr testified that the recommendation was that respondent start off on Aperion's secured third floor, where patients were not allowed to leave freely.

¶ 7 Dr. Wagner testified as follows. Respondent had been admitted to Central Du Page Hospital multiple times, and he was respondent's treating psychiatrist there. Most recently, he had been seeing respondent about six days a week, since respondent's admission on December 27, 2017. He opined that respondent suffered from schizophrenia, which caused psychotic behaviors. They manifested mostly in respondent's beliefs, such as that he was the chief executive officer (CEO) of Boston Market and that he owned his mother's home. Respondent also had to be repeatedly reminded to take care of his personal hygiene. Respondent kept getting readmitted to the hospital in a more psychotic state than when he left, and he was not agreeing to an appropriate treatment plan. Respondent had been placed in a nursing home three times in the past six months, and each time, he walked out. Respondent would ideally be placed in a nursing home designated for mental illnesses and, if available, in a locked unit, given his repeated history of leaving. Respondent had been willingly taking his medications under Dr. Wagner's care. He was "compliant when [he was] directed and given guidance." Dr. Wagner was aware of only one instance when respondent had gotten physical with another person, which was a shoving match with his mother four years ago, but Dr. Wagner "never thought of him as putting others at risk." Dr. Wagner recommended a nursing home placement for respondent for the maximum of 180 days.

¶ 8 Respondent's attorney moved for a directed finding, arguing that, although the petition was for 180 days of outpatient treatment, the State and the hospital were requesting to place respondent in a secure facility on an inpatient basis for 180 days. The trial court denied the motion.

¶ 9 Respondent then provided the following testimony. He showered every night, but the staff may not have realized it. Ever since he started working at the age of 13, most of his salary went toward the home's mortgage, and he and his mother agreed that they would continue to live there together. His mother told him that she would hold his title to the house for safekeeping. Respondent felt that she was too intrusive in his life and with his visitors. He worked for Boston Market as a member of the Marines, and they sent a lot of lifesaving medications to people who needed them. He was receiving a salary of $400 per month but was negotiating with human resources to get a salary comparable to previous CEOs because he knew everything about the company. Respondent described an incident where police came to his house, took all of his belongings, including billions of dollars of research medications, and forced him to go to a nursing home called West Chicago Terrace.

¶ 10 In closing, respondent's attorney argued, *inter alia*, that the statute governing outpatient admission allowed someone to be admitted for up to 180 days because outpatient treatment was a less restrictive setting than inpatient treatment, which the statute governing inpatient admission limited to 90 days. The attorney argued that the State was improperly trying to combine the provisions of both statutes.

¶ 11 The trial court stated that it was taking judicial notice that respondent was found unfit to stand trial in 2010. It stated that the testimony at the hearing was essentially unrebutted and

that respondent had made many statements that were divorced from reality and underscored the need for continued treatment. The trial court therefore granted the petition.

¶ 12 On March 9, 2018, respondent filed a motion to reconsider, arguing that no reasonable definition of outpatient treatment entailed a person being physically confined to a hospital against his will. At a hearing on March 19, 2018, the trial court stated that this argument was the crux of the motion, but it noted that respondent provided no citation to authority for the principle and that "[o]ne would think that there might be something in Illinois case law-wise that might speak to this." On May 7, 2018, the trial court stated that it would grant the motion to reconsider to correct certain scrivener's errors, such as a box being checked next to the statement that the period of "hospitalization" shall not exceed 180 days. It stated that the order's intent was not that respondent be hospitalized but rather that respondent's mother would be his custodian and that the least restrictive environment for him would be custody by and through his mother at Aperion, which was not the same as inpatient hospitalization. It stated that it could not find any case law on outpatient care and custody orders, which "certainly hamper[ed] [it] in terms of trying to construe things."

¶ 13 Respondent filed a notice of appeal on May 18, 2018. In his brief, he argues that (1) his due process rights were violated when the trial court involuntarily committed him to inpatient treatment in a nursing home under the section of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1-100 *et seq.* (West 2018)) governing outpatient treatment (*id.* § 3-813), which has a less stringent standard and is for up to 180 days, twice as long as permitted for inpatient commitment; (2) the involuntary admission order is void for lack of statutory authority because it requires him to take medications, including nonpsychotropic medications; (3) he was denied a fair trial when the trial court *sua sponte* took judicial notice of a matter outside the record after the close of evidence and relied on the information in its findings; and (4) this appeal falls within exceptions to the mootness doctrine.

¶ 14 The State thereafter filed a confession of error, agreeing that the trial court's order should be reversed because the Mental Health Code requires separate hearings for involuntary admission and for involuntary treatment with medications, and also because respondent should not have been committed to an inpatient facility for 180 days after an outpatient commitment proceeding. We initially issued a minute order that accepted the State's confession of error, reversed the trial court's order, and served as the mandate.

¶ 15 On November 20, 2020, respondent filed a motion in this court to recall the mandate and issue an opinion. He argued that we should issue an opinion because there is no case law providing guidance about the difference between an order for involuntary inpatient admission and an order for involuntary outpatient admission, nor is there case law addressing the authorization of involuntary medication in an involuntary outpatient admission order.

¶ 16 On November 30, 2020, we granted respondent's request to recall the mandate. We vacated our minute order and ordered that his request for the new decision to be an opinion would be taken with the case. We now grant that request and are issuing an opinion in this matter.

¶ 17                                    II. ANALYSIS
¶ 18                              A. Mootness Doctrine
¶ 19 We first address respondent's arguments regarding the mootness doctrine. He recognizes that the 180-day involuntary outpatient admission order entered in 2018 has long since expired.

- 4 -

"An appeal is moot when the issues involved in the trial court no longer exist because intervening events have made it impossible for the reviewing court to grant the complaining party effectual relief." *In re Benny M.*, 2017 IL 120133, ¶ 17. Still, there are three traditional exceptions to the mootness doctrine, namely: (1) the public interest exception, (2) the capable of repetition yet avoiding review exception, and (3) the collateral consequences exception. *In re Alfred H.H.*, 233 Ill. 2d 345, 355-63 (2009). Mental health cases usually fall within one of these established exceptions, but the determination must be made on a case-by-case basis. *Id.* at 355. Respondent argues that this appeal is not moot because it falls within the public interest and the capable of repetition but avoiding review exceptions.

¶ 20 The public interest exception to the mootness doctrine applies where (1) the question presented is of a public nature, (2) a need exists for an authoritative determination to guide public officers, and (3) a future recurrence of the question is likely. *Id.* We narrowly construe the public interest exception, and there must be a clear showing of each criterion. *Id.* at 355-56.

¶ 21 As to the issue of involuntary inpatient admission versus involuntary outpatient admission, the first factor applies because the issue involves construing portions of the Mental Health Code, as opposed to being a case-specific concern. See *In re Rita P.*, 2014 IL 115798, ¶ 36 (first criterion satisfied because issue was one of general applicability to mental health cases, involving the proper construction of a section of the Mental Health Code). The second factor also applies because, as the trial court pointed out, there is no case law on this subject. See *id.* ¶ 37 (court may properly consider an issue of first impression under the public interest exception); *In re Mary Ann P.*, 202 Ill. 2d 393, 402 (2002) ("the procedures which must be followed and the proofs that must be made before a court may authorize involuntary treatment to recipients of mental health services are matters of a public nature and of substantial public concern"). Last, the third factor applies because mental health patients often face involuntary commitment to nursing home settings. Indeed, respondent testified to being forcibly taken to a nursing home, and the record reveals that he had several nursing home placements. Accordingly, the issue of the differing requirements of involuntary inpatient admission versus involuntary outpatient admission falls within the public interest exception to the mootness doctrine.

¶ 22 The same cannot be said of respondent's argument that the trial court lacked the authority to order medication as part of its involuntary admission order. See *In re Daniel K.*, 2013 IL App (2d) 111251, ¶ 20 (addressing only the issues on appeal that fell within exceptions to mootness). In *In re Robert F.*, 396 Ill. App. 3d 304 (2009), the court noted that a respondent has the right to refuse medications (*id.* at 314 (citing 405 ILCS 5/2-107 (West 2008))) and that, in order to involuntarily administer medications, the court must conduct a separate hearing from one on involuntary admission, with separate procedural safeguards (*id.* (citing 405 ILCS 5/2-107.1 (West 2008))). In *In re David M.*, 2013 IL App (4th) 121004, ¶¶ 35-38, the court accepted the State's concession that the trial court's order authorizing involuntary admission with psychotropic medication should be reversed because the respondent did not receive timely notice of the petition and the trial court failed to conduct separate hearings on the petitions for involuntary medication and involuntary admission. Subsequently, in *In re E.F.*, 2014 IL App (3d) 130814, ¶ 48, the court similarly reversed a portion of an order allowing medical providers to administer psychotropic medications because the trial court did not hold separate hearings on the petitions for involuntary admission and to administer psychotropic medication. See also

*In re Sharon H.*, 2016 IL App (3d) 140980, ¶ 31 (section 2-107.1(a-5)(2) of the Mental Health Code (405 ILCS 5/2-107.1(a-5)(2) (West 2012)) requires separate hearings on involuntary admission and medication petitions). As such, an authoritative determination on this issue is not necessary because it has already been addressed in several appellate decisions. Respondent argues that there are no Illinois cases specifically discussing the authorization of involuntary medication in an order for involuntary *outpatient* admission, but this is a distinction without a difference, as the cases and the statute are clear that the trial court must hold separate hearings on petitions to involuntarily administer psychotropic medication and for involuntary admission. An involuntary admission hearing can be for admission on either an inpatient basis or an outpatient basis. See 405 ILCS 5/1-119, 1-119.1 (West 2018).[1]

¶ 23   Respondent also discusses the capable of repetition yet avoiding review exception, which applies if (1) the challenged action's duration is too short to be litigated prior to its cessation and (2) there is a reasonable expectation that the same party would be subjected to the same action in the future. *In re Alfred H.H.*, 233 Ill. 2d at 358. The second criterion does not apply here to the question of whether a separate hearing is necessary for the involuntary administration of medication, as the State has already conceded error on this issue as it pertains to respondent, so it is very unlikely that the issue would recur with him.

¶ 24   In his brief, respondent argues that the trial court erred in *sua sponte* taking judicial notice of respondent previously being found unfit to stand trial. However, respondent does not argue in his motion to recall the mandate that this issue falls within an exception to the mootness doctrine, nor do we conclude that it does, so we do not address it in this opinion.

¶ 25                    B. Involuntary Inpatient Admission Versus
                              Involuntary Outpatient Admission

¶ 26   Turning to the merits, respondent cites the dictionary definitions of "inpatient" and "outpatient." He argues that Central Du Page Hospital's petition was filed under the Mental Health Code's outpatient commitment provisions, which are less stringent than the criteria for involuntary inpatient commitment, but they sought his involuntary commitment to a nursing home. Respondent notes that a person cannot be committed on an inpatient basis for more than 90 days. He points out that he was ultimately committed to the secure behavioral health unit of Aperion, which was a skilled nursing facility, for 180 days. He maintains that, while a nursing home may be considered a less restrictive setting than a psychiatric hospital unit, it is nonetheless an inpatient setting where a person receives bed, board, and all of their mental health care and treatment. Respondent cites *In re Linda B.*, 2017 IL 119392, ¶ 36, where our supreme court stated that "a facility, or section thereof, capable of providing mental health services, that does in fact provide the individual mental health services, *is* a mental health facility." (Emphasis in original.) Respondent also cites *In re Guardianship of Muellner*, 335 Ill. App. 3d 1079, 1083 (2002), where the respondent was involuntarily committed to the behavioral unit of a skilled-care nursing facility. The court held that the facility qualified as a licensed private hospital under sections 1-113 and 1-114 of the Mental Health Code (405 ILCS 5/1-113, 1-114 (West 2000)). *Muellner*, 335 Ill. App. 3d at 1084. Respondent argues that, just

---

[1]Additionally, a "petition for involuntary admission on an outpatient basis may be combined with or accompanied by a petition for involuntary admission on an inpatient basis." 405 ILCS 5/3-751(c) (West 2018).

as the nursing home in *Muellner* was licensed with the Illinois Department of Public Health and therefore considered a licensed private hospital under the Mental Health Code, so too is Aperion. Respondent contends that, because he was in a locked unit of a licensed private hospital, he could have been committed only pursuant to inpatient admission criteria and only for up to 90 days. He points out that involuntary inpatient commitment orders have been recognized as "inherently more restrictive than other types of mental health orders" because they prevent people from moving about at will (*In re Michael H.*, 392 Ill. App. 3d 965, 972 (2009)) and thus are a " 'massive curtailment of liberty' " (*In re Barbara H.*, 183 Ill. 2d 482, 496 (1998) (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980))).

¶ 27 Respondent additionally argues that the care and custody order that the trial court entered, which named his mother as his custodian, does not alter the analysis. He points out that for such an order a custodian is a person "willing and able to properly care for" the respondent. 405 ILCS 5/3-812(a) (West 2018). The care and custody order may grant the custodian the authority to seek inpatient admission of the respondent if the respondent is not following the order's conditions. See *id.* § 3-812(b). If the custodian seeks such inpatient admission, the respondent may not be detained for longer than 24 hours, excluding weekends and holidays, unless a petition for involuntary admission on an inpatient basis has been filed. *Id.* Respondent argues that a care and custody order thus envisions as a custodian a relative or friend who is caring for the respondent in their actual custody/home, as there would be no need to seek inpatient admission for a respondent already committed to a nursing home.

¶ 28 We begin by setting forth the sections of the Mental Health Code discussing involuntary admission on an inpatient basis and an outpatient basis. Section 1-119, which governs involuntary admission on an inpatient basis, states:

" 'Person subject to involuntary admission on an inpatient basis' means:

(1) A person with mental illness who because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;

(2) A person with mental illness who because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or others, unless treated on an inpatient basis; or

(3) A person with mental illness who:

(i) refuses treatment or is not adhering adequately to prescribed treatment;

(ii) because of the nature of his or her illness, is unable to understand his or her need for treatment; and

(iii) if not treated on an inpatient basis, is reasonably expected, based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph (1) or paragraph (2) of this Section.

In determining whether a person meets the criteria specified in paragraph (1), (2), or (3), the court may consider evidence of the person's repeated past pattern of specific behavior and actions related to the person's illness." *Id.* § 1-119.

An initial order for commitment on an inpatient basis may not exceed 90 days. *Id.* § 3-813(a).[2]

¶ 29    Section 1-119.1 governs people subject to involuntary admission on an outpatient basis and states:

" 'Person subject to involuntary admission on an outpatient basis' means:

(1) A person who would meet the criteria for admission on an inpatient basis as specified in Section 1-119 in the absence of treatment on an outpatient basis and for whom treatment on an outpatient basis can only be reasonably ensured by a court order mandating such treatment; or

(2) A person with a mental illness which, if left untreated, is reasonably expected to result in an increase in the symptoms caused by the illness to the point that the person would meet the criteria for commitment under Section 1-119, and whose mental illness has, on more than one occasion in the past, caused that person to refuse needed and appropriate mental health services in the community." *Id.* § 1-119.1.

An initial order of commitment on an outpatient basis may not exceed 180 days. *Id.* § 3-813.

¶ 30    A person is subject to involuntary admission, whether on an inpatient or outpatient basis, only if the State proves the statutory criteria by clear and convincing evidence. *Id.* § 3-808. We will not reverse a trial court's order of involuntary commitment unless the judgment is against the manifest weight of the evidence. *In re Lisa G.C.*, 373 Ill. App. 3d 586, 594 (2007). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006). In contrast, statutory construction presents a question of law, which we review *de novo*. *Whitaker v. Wedbush Securities, Inc.*, 2020 IL 124792, ¶ 16. When construing a statute, our primary objective is to ascertain the legislative intent, which is best indicated by the plain and ordinary meaning of the statute's language. *Id.*

¶ 31    The Mental Health Code's definition of "mental health facility" includes "any licensed private hospital, institution, or facility or section thereof." 405 ILCS 5/1-114 (West 2018). "Licensed private hospital" means "any privately owned home, hospital, or institution, or any section thereof which is licensed by the Department of Public Health and which provides treatment for persons with mental illness." *Id.* § 1-113. "Hospitalization" means "the treatment of a person by a mental health facility as an inpatient." *Id.* § 1-112. We agree with respondent that under these statutes, and consistent with *Muellner*, the nursing home to which respondent was assigned, Aperion, was a licensed private hospital.

¶ 32    As stated, the Mental Health Code does not define "inpatient" or "outpatient." If a statute does not define a term, it is appropriate to look to dictionary definitions to determine the term's ordinary and popularly understood meaning. *In re Marriage of Zamudio*, 2019 IL 124676, ¶ 19. Merriam-Webster's dictionary defines "inpatient" as "a hospital patient who receives lodging and food as well as treatment." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/inpatient (last visited July 15, 2021) [https://perma.cc/D4LA-AEJR]. It defines "outpatient" as "a patient who is not hospitalized overnight but who visits a hospital, clinic, or associated facility for diagnosis or treatment." Merriam-Webster's

---

[2]A court may order involuntary commitment on an inpatient basis for 180 days only after the respondent has had two consecutive 90-day involuntary inpatient admissions. 405 ILCS 5/3-813(a), (b) (West 2018); see *In re Jessica H.*, 2014 IL App (4th) 130399, ¶ 30.

Online Dictionary, https://www.merriam-webster.com/dictionary/outpatient (last visited July 15, 2021) [https://perma.cc/L9D2-2PNQ]. The involuntary admission that the trial court ordered here falls within the definition of admission on an "inpatient" basis because respondent was a patient in a hospital who received lodging, food, and treatment. Conversely, the involuntary admission that the trial court ordered does not fall within the definition of admission on an "outpatient" basis because that definition excludes overnight hospitalization.

¶ 33    Therefore, the trial court ordered that respondent be involuntarily admitted on an inpatient basis, even though the staff at Central Du Page Hospital filed a petition for involuntary outpatient admission. As respondent highlights, the statute governing involuntary inpatient admission contains stricter criteria than that for involuntary outpatient admission, in that it requires a showing that the respondent would otherwise be reasonably expected to place themselves or others in physical harm, is incapable of independently caring for their basic physical needs so as to prevent serious harm to themselves, or does not understand the need for and refuses treatment such that they are reasonably expected to suffer mental or emotional deterioration to the extent that they meet one of the first two criteria. 405 ILCS 5/1-119 (West 2018). Because involuntary inpatient admission severely curtails a person's liberty (*In re Barbara H.*, 183 Ill. 2d at 496), initial commitment orders are limited to 90 days (405 ILCS 5/3-813(a) (West 2018)).

¶ 34    In contrast, involuntary admission on an outpatient basis requires a showing that either (1) a person would meet the criteria for inpatient admission without treatment on an outpatient basis and for whom such treatment can be reasonably ensured only through court order, or (2) a person has a mental illness that, without treatment, is reasonably expected to progress to the point that the person would meet the criteria for involuntary inpatient admission and whose mental illness has previously caused the person to refuse necessary mental health services. *Id.* § 1-119.1. As outpatient treatment does not involve overnight hospitalization, it is not as severe an impairment to a person's liberty as inpatient treatment, and thus an initial order of commitment on an outpatient basis may be for a longer period of time, specifically up to 180 days. See *id.* § 3-813. Accordingly, the trial court erred by granting the petition for involuntary outpatient admission where the treatment ordered fell within the category of involuntary inpatient admission.

¶ 35    We further agree with respondent that the fact that the trial court entered an order placing respondent in the care and custody of his mother does not affect the above analysis. Section 3-812(a) of the Mental Health Code (*id.* § 3-812(a)) states:

> "If a respondent is found subject to involuntary admission on an outpatient basis, the court may issue an order: (i) placing the respondent in the care and custody of a relative or other person willing and able to properly care for him or her; or (ii) committing the respondent to alternative treatment at a community mental health provider."

First, the statute applies if the trial court finds that a respondent is subject to involuntary admission on an outpatient basis, whereas here the trial court effectively ordered respondent committed on an inpatient basis. Second, the statute states that the trial court may order the respondent to either be placed in the care and custody of an individual willing to properly care for him or her or be committed to alternative treatment at a community mental health provider. Here, respondent was placed in the care and custody of his mother, but she testified that she was not willing to care for him. The statute additionally states that the order may grant the custodian the authorization to hospitalize the respondent if he or she fails to comply with the

order's conditions, but such hospitalization is limited to 24 hours, excluding weekends and holidays (*id.* § 3-812(b)). Indeed, the statutory definition of "care and custody" expressly excludes the authority to require hospitalization of the respondent:

> " 'Care and custody' means authorization to an appropriate person, with his consent, to provide or arrange for proper and adequate treatment of another person who is subject to involuntary admission but does not include the authority to require hospitalization of the recipient unless such authority is expressly granted by court order pursuant to Article VII of Chapter III."[3] *Id.* § 1-102.

As stated, Aperion falls within the definition of a "mental health facility" and a "licensed private hospital" (see *supra* ¶ 31), and "hospitalization" means "the treatment of a person by a mental health facility as an inpatient" (405 ILCS 5/1-112 (West 2018)). The order for care and custody thus could not give respondent's mother the authority to require respondent to stay at Aperion under the terms set forth by the court, which effectively ordered respondent's "hospitalization."

¶ 36    The trial court's amended order stated that, in addition to being in the care and custody of his mother, respondent was ordered to reside at Aperion as a community placement, unless otherwise decided by his mother, who could place him in another "intermediate care facility." However, section 3-812 states that the court may issue an order placing a respondent subject to involuntary admission on an outpatient basis in an individual's care or custody "or" committing the respondent to alternative treatment at a community health provider. *Id.* § 3-812(a). "The word 'or' ordinarily is used in the disjunctive sense" (*People v. Howard*, 2017 IL 120443, ¶ 21), such that the trial court could not order both that respondent be in his mother's custody and that he be committed to Aperion. Even if the trial court's order was not strictly a community placement because his mother had the authority to remove respondent from Aperion, the placement that the trial court ordered nevertheless violated the Mental Health Code because, as discussed, it required respondent's involuntary inpatient admission based on a petition and the criteria for involuntary outpatient admission.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we reverse the judgment of the Du Page County circuit court.

¶ 39    Reversed.

---

[3]This section sets forth the procedures for involuntary admission on an inpatient basis. See 405 ILCS 5/3-700 to 3-706 (West 2018).