NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200441-U

NO. 4-20-0441

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 15, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CHRISTINA HENDRIX, | ) | Appeal from |
|     Petitioner-Appellee, | ) | Circuit Court of |
|     v. | ) | Clark County |
| DANIEL TRUELOVE, | ) | No. 20OP12 |
|     Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | David W. Lewis, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, concluding the trial court's judgment granting an
order of protection was not against the manifest weight of the evidence.

¶ 2         In March 2020, petitioner, Christina Hendrix, filed a petition for an order of

protection against respondent, Daniel Truelove.  In July 2020, the trial court entered an

emergency order of protection.  The following month, the court entered an interim order of

protection.

¶ 3         Respondent appeals, arguing (1) the trial court erred by granting the order of

protection and (2) the order of protection required respondent to commit a crime by violating the

School Code (105 ILCS 5/10-20.12b (West 2020)).  For the following reasons, we affirm the

trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5                In March 2020, petitioner filed a petition for an order of protection against

respondent.  The petition alleged that, on March 15, 2020, respondent called Rick Davidson,

petitioner's boyfriend, and told Davidson he was moving to Casey with the parties' minor child,

A.T.  The petition alleged respondent repeatedly made telephone calls and tried to "stir stuff up."

According to the petition, respondent repeatedly stated he was moving to Casey and sending

A.T. to the schools in Casey.  According to the petition, the children currently attended

Martinsville schools.  Respondent allegedly stated he was going to get custody of the children

and manipulated the children.  Petitioner stated, "He likes to threaten [and] scare me [and] has

done this for years[;] he has threatened that he will ruin my life [and] make it hell."  Finally,

petitioner alleged respondent had hurt other women and she felt she was at risk.

¶ 6                A. Hearing on the Petition for a Plenary Order of Protection

¶ 7                In July 2020, the trial court entered an emergency order of protection.  In August

2020, the matter proceeded to a hearing on the petition for a plenary order of protection.  The

trial court heard the following evidence.

¶ 8                                1. *Petitioner*

¶ 9                Petitioner testified she lived in Marshall, Illinois, with Davidson and her daughter,

A.T.  The parties were previously married, and a dissolution of marriage judgment that

incorporated a joint parenting agreement was entered in September 2011.  At the time of the

judgment, petitioner lived in Casey, and respondent lived in Martinsville.  Petitioner moved to

Marshall in June 2018.  A.T. was entering eighth grade in Martinsville, where she historically

attended school.

¶ 10               According to petitioner, the parties generally followed the split custody

arrangement.  Petitioner testified respondent was hospitalized and underwent rehabilitation for

alcoholism "after 2017 and then again in 2019." In 2018, respondent was "making texts and phone calls being threatening, harassing." According to petitioner, respondent wanted to switch A.T. to Casey schools. Petitioner opined respondent wanted to switch schools "because he couldn't go to youth football because of his alcohol issues." Following respondent's release from treatment in 2019, communication between the parties was good. But in the middle of 2019, respondent again began pressuring petitioner to switch to the schools in Casey. When asked what respondent said to her, petitioner stated, "Telling me that I need to figure out how I'm going to get the kids to Casey. We need to work out a deal. If we don't get this done, I'll never see the kids again. He's going to get custody of the kids."

¶ 11    Petitioner testified respondent called her two or three times a week and sometimes more often in the evening. According to petitioner, respondent used profane language and called her names, including "whore" and "b***." When respondent called in the evening and was angry and cursing, petitioner assumed he had been drinking based on her experience with him. Some of the phone calls occurred when respondent had A.T. with him. On a couple occasions, respondent called at 1 or 2 a.m.

¶ 12    In March 2020, respondent and Davidson had a discussion and there was an ongoing argument about the discussion. Petitioner was talking with her daughter about going to school in Casey, and respondent called A.T.'s phone. Respondent was on speakerphone and said he was going to get custody of A.T. and move her to Casey schools. Petitioner wanted to discuss the matter where A.T. could not hear, and respondent said, "She's a big f*** girl. She can hear it." Respondent called petitioner "unstable" and a "whore" within earshot of A.T.

¶ 13    Petitioner hung up on respondent and took A.T. inside to discuss the situation. Davidson entered the room and told A.T. to leave, so A.T. called respondent to pick her up.

Petitioner assured A.T. they would work the issue out, so A.T. called respondent again. The police came to petitioner's house, and after speaking with the police, petitioner filed the petition for an order of protection. Petitioner testified she sought an order of protection because, "He scares me, intimidates me, harasses me constantly. I am scared for my life that during these times that we're in argument about what's going on, I don't know what he's going to do. I mean, he's beat me before, he's pulled my hair, drug me out of the trailer[.]"

¶ 14 Petitioner testified she was concerned for her physical welfare. After petitioner obtained the emergency protective order but before respondent was served, respondent called petitioner and told her she would "pay hell" for getting him served and would never see her kids again. Petitioner testified respondent's conduct caused her distress. Petitioner had concerns about respondent's alcohol use and was aware respondent had a pending driving under the influence (DUI) charge.

¶ 15 In January 2020, respondent told petitioner he purchased a house in Casey so he could be closer to his parents. On the day petitioner obtained the emergency order of protection, the parties were scheduled for mediation on the issue of changing A.T.'s school. Petitioner admitted the phone calls from respondent at 1 or 2 a.m. were about grieving over the recent death of the parties' daughter.

¶ 16 Petitioner testified she discussed the issue with the Martinsville school and made arrangements allowing A.T. to continue her enrollment there. According to petitioner, even if respondent lived in Casey, A.T. could still attend Martinsville schools. Petitioner testified she did not file for an order of protection to gain an advantage on this issue. Petitioner testified she filed for an order of protection to protect herself from constant threats and harassment.

¶ 17 2. *Respondent*

¶ 18    Respondent testified he bought a house in Casey in January 2020. At the time the parties divorced, they had three minor children who attended Martinsville schools. The parties' oldest child was 24 years old, and the middle child passed away in February 2019. According to respondent, he started a new job in Casey and he struggled to get the child to the Martinsville school bus, take care of his cows, help his parents out, and get to work on time. Respondent testified there was extended family that lived in Casey who offered to help provide transportation for sports.

¶ 19    When respondent brought up moving to Casey with petitioner, petitioner would get angry and hang up the phone. In May 2020, respondent texted petitioner about going to mediation and made an appointment with the mediator. According to respondent, the parties had gone to mediation twice before. Petitioner cancelled the appointment.

¶ 20    Respondent denied calling petitioner names to her face or in front of the children. Respondent also denied calling petitioner's boyfriend names. According to respondent, he never threatened to ruin petitioner's life. Respondent denied threatening petitioner with violence. Respondent testified he never struck petitioner but petitioner had hit him.

¶ 21    Respondent stated he did not drink and drive. According to respondent, he had breath alcohol ignition interlock devices (BAIID) installed on his work and personal vehicles. Respondent acknowledged he had a pending DUI charge and stated A.T. was in petitioner's care when he was arrested. According to respondent, petitioner had never brought up respondent's alcohol consumption prior to the petition for an order of protection. Respondent testified he was hospitalized in 2019 but it was for "C-diff" and not for alcohol treatment.

¶ 22    According to respondent, A.T. played on a traveling softball team that practiced in Robinson, Casey, and Martinsville. Respondent testified he, petitioner, and A.T. had a phone

conversation about school districts. Respondent denied cursing during the conversation. According to respondent, A.T. said she preferred going to Casey schools over Marshall schools. Following the conversation, A.T. called respondent and told him Davidson had thrown her out of the house. Respondent called A.T., who was crying and screaming. Then, neither A.T. nor petitioner would answer their phones, so respondent called the sheriff for a wellness check.

¶ 23                          B. Trial Court's Judgment

¶ 24        The trial court noted it was an order of protection case and not a custody case. The court further noted it was not considering any allegation that respondent drove under the influence with the children as there was no evidence presented to prove that allegation. However, the court was satisfied that respondent had been harassing petitioner during ongoing phone calls. Because many of the issues turned on what happened in the parties' divorce case, the court entered an interim order of protection. The court stressed it was trying to preserve the status quo so the best interest of the minor in the divorce case could be determined at a later date. Thereafter, the court entered an interim order of no contact, no harassment, and no interfering with the personal liberty of the petitioner. The court stated the order was effective "until further order of the court but not more than 2 years" from the date the order was entered.

¶ 25        The trial court declined to include A.T. in the protective order. The court ordered the parties to continue to share custody every other week. The court ordered that all necessary steps be taken to allow A.T.'s continued enrollment in, and attendance at, Martinsville schools on an interim basis. The parties agreed respondent would pick up A.T. at the Marshall Police Department and petitioner would pick up A.T. at the Casey Police Department.

¶ 26        This appeal followed.

¶ 27                          II. ANALYSIS

¶ 28　　　　　　On appeal, respondent argues (1) the trial court erred by granting the order of protection and (2) the plenary order of protection required respondent to violate the School Code (105 ILCS 5/10-20.12b (West 2020)).

¶ 29　　　　　　We first must address this court's jurisdiction over this appeal. Respondent asserts this court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). Respondent further asserts notice of appeal was timely under Rule 303 (Ill. S. Ct. R. 303 (eff. July 1, 2017)). Respondent asserts no further basis for appeal.

¶ 30　　　　　　Generally, an interim order is not appealable because it does not finally and absolutely fix the rights of the parties. *In re T.M.*, 302 Ill. App. 3d 33, 37, 706 N.E.2d 931, 934 (1998). "For appellate review purposes, an order is considered final even where the court reserved an issue for future determination, so long as that issue was incidental to the rights adjudicated by the judgment." *In re Marriage of Johnson*, 351 Ill. App. 3d 88, 97, 812 N.E.2d 661, 668 (2004).

¶ 31　　　　　　Here, the trial court labeled the protective order "interim." However, by the order's own terms it was effective "until further order of the court but not more than 2 years" from the date the order was entered. The Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/220(a)(2), (b)(0.05) (West 2020)) provides for interim orders effective for up to 30 days and plenary orders effective for up to two years. Given this statutory authority and the order's own terms providing for an expiration date not to exceed two years from the date of entry, we find the court entered a plenary order of protection, not an interim order of protection. Similar to how we look to the content of a pleading to determine the character of a pleading, we consider the content of the court's order, not the label, to decide the character of the order. *In re Scarlett Z.D.*, 2015 IL 117904, ¶ 64, 28 N.E.3d 776. Moreover,

although the order did leave open for future resolution in the dissolution case the issue of A.T.'s best interest and where she would attend school, we find this issue to be merely incidental to the rights adjudicated in the order of protection—namely protection from the alleged harassment. Accordingly, we conclude this court has appellate jurisdiction in this instance, and we turn to the merits of the appeal.

¶ 32    The central inquiry in a proceeding to obtain an order of protection is whether the petitioner has been abused. *Best v. Best*, 223 Ill. 2d 342, 348, 860 N.E.2d 240, 244 (2006). Abuse includes harassment, which is defined as "conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." 750 ILCS 60/103(7) (West 2018). "Any proceeding to obtain, modify, reopen[,] or appeal an order of protection *** shall be governed by the rules of civil procedure of this State. The standard of proof in such a proceeding is proof by a preponderance of the evidence." 750 ILCS 60/205(a) (West 2018). This court will reverse a trial court's finding by the preponderance of the evidence only if it is against the manifest weight of the evidence. *Best*, 223 Ill. 2d at 348-49.

¶ 33    "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* at 350. Under this standard of review, we give deference to the trial court because it is in the best position to observe the demeanor and conduct of the parties and the witnesses. *Id.* We will not substitute our judgment for that of the finder of fact regarding witness credibility, the weight given to the evidence, or the inferences drawn from the evidence. *Id.* at 350-51.

- 8 -

¶ 34    Respondent argues the trial court erred by entering the interim order of protection because petitioner's primary purpose in seeking the order of protection was to obtain custody of A.T. Respondent asserts the petition for an order of protection made no allegations of harassment under the Domestic Violence Act (750 ILCS 60/103(7) (West 2020)) because the petition referenced a single telephone call. Petitioner asserts the trial court properly granted the petition for an order of protection where the evidence showed respondent made repeated telephone calls and repeated threats to conceal the minor child from petitioner.

¶ 35    The Domestic Violence Act defines harassment as follows:

"(7) 'Harassment' means knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner. Unless the presumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress:

(i) creating a disturbance at petitioner's place of employment or school;

(ii) repeatedly telephoning petitioner's place of employment, home or residence;

(iii) repeatedly following petitioner about in a public place or places;

(iv) repeatedly keeping petitioner under surveillance by remaining present outside his or her home, school, place of

employment, vehicle or other place occupied by petitioner or by peering in petitioner's windows;

(v) improperly concealing a minor child from petitioner, repeatedly threatening to improperly remove a minor child of petitioner's from the jurisdiction or from the physical care of petitioner, repeatedly threatening to conceal a minor child from petitioner, or making a single such threat following an actual or attempted improper removal or concealment, unless respondent was fleeing an incident or pattern of domestic violence; or

(vi) threatening physical force, confinement or restraint on one or more occasions." 750 ILCS 60/103(7)(i)-(vi) (West 2020).

¶ 36   In this case, petitioner filed a petition for an order of protection following the March 15, 2020, telephone call. Petitioner testified respondent used profane language and told her she would never see A.T. again. Petitioner further testified respondent frequently and increasingly made threatening and upsetting telephone calls leading up to the date she sought the order of protection. Although respondent argues the petition alleged only one such telephone call, the evidence adduced at the hearing clearly supported a finding of harassment based on repeated telephone calls and repeated threats to conceal A.T. from petitioner. Petitioner testified respondent called her multiple times a week and the calls increased in the months before she filed the petition for an order of protection. This conduct is presumed to cause emotional distress under the Domestic Violence Act. Respondent failed to rebut this presumption. Moreover, petitioner testified respondent's conduct in fact caused her distress.

¶ 37 Our review of the record does not indicate that petitioner's primary purpose in filing the petition for a protective order was to resolve a custody dispute. The parties had pending filings in the divorce case, which the parties and the court referenced several times at the hearing. Petitioner never testified that she was seeking custody of A.T. or wanted the trial court to resolve the underlying issue of where A.T. would ultimately attend school. In fact, petitioner specifically testified she did not file for an order of protection to gain an advantage on the issue of where A.T. would attend school. Petitioner's testimony indicated her primary purpose in filing for an order of protection was to prevent the repeated distressing telephone calls from respondent.

¶ 38 The trial court clearly credited petitioner's testimony about the frequency and nature of the telephone calls and discredited respondent's blanket denial of using profane language or threatening to conceal A.T. Given petitioner's testimony that respondent repeatedly made telephone calls where he called her names and told her she would never see A.T. again, we cannot say the trial court's finding of harassment was against the manifest weight of the evidence.

¶ 39 Respondent next argues the order of protection improperly required respondent to violate the School Code, which provides, in part: "A person who knowingly or wilfully presents to any school district any false information regarding the residency of a pupil for the purpose of enabling that pupil to attend any school in that district without the payment of a nonresident tuition charge shall be guilty of a Class C misdemeanor." 105 ILCS 5/10-20.12b(f) (West 2020).

¶ 40 Petitioner asserts the order of protection did not require either party to knowingly or willfully present false information regarding residency to the Martinsville school district.

Petitioner further asserts the School Code provides a remedy for the school board should the Martinsville school board have an issue with A.T.'s attendance.

¶ 41 We first note respondent never raised this issue before the trial court. "Issues not raised before the trial court are deemed forfeited and may not be raised for the first time on appeal." *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 38, 123 N.E.3d 1271. Moreover, as petitioner points out, the argument that the order of protection required respondent to commit a crime by violating the School Code is rebutted by the record. Petitioner testified she made arrangements with the Martinsville school district for A.T.'s continued attendance, even if respondent lived in Casey. Therefore, we decline to address respondent's forfeited claim.

¶ 42 Because we conclude the trial court's judgment granting the interim order of protection, which we have found to be a plenary order of protection, was not against the manifest weight of the evidence, we affirm the judgment of the trial court.

¶ 43 III. CONCLUSION

¶ 44 For the reasons stated, we affirm the trial court's judgment.

¶ 45 Affirmed.